UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
SOUTHERN DIVISION
at DAYTON

| | | |
|---|---|---|
| MARY DONOFRIO, | ) | |
| individually and on behalf of all | ) | |
| other Ohio residents similarly situated, | ) | |
| | ) | |
| | ) | Case No.: 3:19-cv-58 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AUTO-OWNERS (MUTUAL) INSURANCE | ) | |
| COMPANY | ) | |
| 6101 Anacapri Blvd. | ) | |
| Lansing, Michigan 48917-3999 | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT WITH JURY DEMAND

### Introduction

COMES NOW Plaintiff, Mary Donofrio ("Donofrio"), individually and on behalf of all others similarly situated, and for his Class Action Complaint against Auto-Owners (Mutual) Insurance Company ("Auto-Owners") states and alleges the following:

1.     On or about April 3, 2018, Donofrio's house located at 945 Highridge Ave., Dayton, Ohio (the "Insured Property") suffered damage covered by policy number 48-123-267-00, issued to Donofrio by Auto-Owners.  The damage to the Insured Property required replacement and/or repair.

2.     While Auto-Owners did compensate Donofrio for certain damage to her property, as alleged in detail below, under its actual cash value ("ACV") calculations, Auto-Owners systematically and improperly depreciated the cost of the labor required to repair the damage to

the Insured Property. As a result, Auto-Owners underpaid Donofrio's claim, thus leaving Donofrio under-indemnified.

3. By underpaying Donofrio's claim, Auto-Owners denied Plaintiff access to funds necessary to pick up the pieces during a period of great need and tremendous stress. This is directly contrary to the purpose of insurance – to protect insureds when they are in such need.

4. Auto-Owners' systematic underpayment of claims is not limited to Donofrio's claims. On information and belief, Auto-Owners consistently depreciates the cost of labor from its ACV calculations for structural damage claims made throughout Ohio and has been doing so at all times relevant to the allegations of this Complaint. This includes payments to victims of natural disasters such as tornado and other wind storms, victims of fire, and those who have suffered from any other form of covered real property loss.

5. Ohio law allows an insurer to depreciate the value of building materials, but does not allow the depreciation of the cost of labor. As a result, and as detailed below, by depreciating labor costs from its ACV calculations around Ohio, Auto-Owners has engaged, and continues to engage, in a systematic and unlawful pattern of underpayment of insurance claims.

### Parties

6. Plaintiff Mary Donofrio is a resident and citizen of resident of Montgomery County, Ohio.

7. Defendant Auto-Owners is an insurance company domiciled in the state of Michigan and is believed to be licensed to do business in the State of Ohio. Auto-Owners can be served at 6101 Anacapri Blvd., Lansing, Michigan 48917.

### Jurisdiction and Venue

8.     Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(d)(2). There are more than 100 members in the proposed class, at least one member of the proposed class has state citizenship that is different than Defendant's, and the matter in controversy exceeds $5,000,000, exclusive or interest and costs.

9.      This Court has personal jurisdiction over Defendant as Defendant has sufficient minimum contacts with the state of Ohio, is authorized to do business in Ohio and has availed itself of the privilege of conducting business in the State of Ohio.

10.     Venue is proper in this forum pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in Montgomery County, Ohio, which is situated within the Southern District of Ohio, Dayton Division. Venue is also proper pursuant to 28 U.S.C. §1391(c) because Defendant is a corporation deemed to reside in this District.

11.     In determining the amount in controversy, Plaintiff clarifies that she is not seeking the aggregate amount of depreciated labor costs for himself and all proposed class members throughout the proposed class period. Instead, depreciated labor costs for ACV payments are sometimes later paid to policyholders upon further adjustment of their claims. If amounts for depreciated labor are later repaid to a policyholder, those amounts would not be included in the damages sought by Plaintiff on behalf of himself and the proposed class members.

## **Factual Background**

12.     Donofrio contracted with Auto-Owners for an insurance policy providing coverage for certain losses to the Insured Property. At all times relevant to this action, the Insured Property was insured under Auto-Owners Policy No. 48-123-267-00. The policy is attached hereto as Exhibit A.

13.     On or about April 3, 2018, the Insured Property suffered damage covered by Auto-Owners Policy No. H3728811464540. The damage to the Insured Property required replacement and/or repair. Donofrio timely submitted a claim to Auto-Owners requesting payment for the covered loss.

14.     Auto-Owners subsequently confirmed that Donofrio had sustained a covered loss to the Insured Property, and that Auto-Owners was contractually obligated to pay Donofrio's claim for her covered loss pursuant to the terms of her insurance policy.

15.     Soon after the April 3, 2018 loss, Auto-Owners sent an adjuster to inspect the damage to the Insured Property. As set forth in written estimates and correspondence to Donofrio, Auto-Owners's adjuster determined that Donofrio had suffered a covered loss in the amount of $6,333.87 to her home. The estimate included the cost of materials and labor required to complete the repairs. A copy of the estimate and correspondence sent to Donofrio is attached as Exhibit B.

16.     In calculating its payment obligations to Donofrio, Auto-Owners subtracted from the adjuster's replacement cost estimate for the home the $500.00 deductible provided for in the policy plus an additional $2,729.02 for depreciation. This resulted in a net ACV payment of $3,104.85.

17.     The estimate upon which Auto-Owners's ACV payment for the Insured Property was based indicates that Auto-Owners depreciated both material costs and labor costs associated with repairs to the house.

### Policy Terms and Claims Settlement Practices

18.     The insurance policy Auto-Owners issued to Donofrio and other members of the proposed class provides replacement cost value ("RCV") coverage for both total loss of and partial

loss to covered dwellings and other structures and, in some cases, ACV coverage for certain structural components.

19.     At all times relevant to this cause of action, Auto-Owners's custom and practice has been to pay its RCV policy holders the ACV of covered loss claims, net of any applicable deductible.  In order to qualify for additional payment and recover the full RCV of the covered loss where RCV coverage is available under the insurance policy, the insured party must repair, rebuild or replace the damaged property within a specific time frame and submit proof to Auto-Owners that the repair or replacement was timely completed.  Costs that exceed the amount of the ACV payment are the responsibility of the policy holder.

20.     At all times relevant hereto, Auto-Owners's methodology for calculating ACV has been to determine the cost of repairing or replacing the damaged property then deduct depreciation.

21.     In the context of insurance law, "depreciation" is defined as "[a] decline in an asset's value because of use, wear, obsolescence, or age."  BLACK'S LAW DICTIONARY 506 (9th ed. 2009).  Materials used in the repair or replacement of damaged property e.g. roofing shingles or metal, diminished in value over time due to use, wear, obsolescence, and age.  As such, these are assets that can be depreciated.  In contrast, labor is not susceptible to aging or wear.  Its value does not diminish over time.  Conceptually, and practically, depreciation simply cannot be applied to labor costs.

22.     The basic purpose of property insurance is to provide indemnity to policyholders. To indemnify means to put the insured back in the position he or she enjoyed before the loss – no better and no worse.  A policy that provides for payment of the ACV of a covered loss is an indemnity contract because the purpose of the ACV payment is to make the insured whole but not to benefit him or her because a loss occurred.  See APPLEMAN ON INSURANCE 2D § 3823.

An RCV policy expands the basic concept of indemnity to include coverage for repairs and replacement costs that exceed the ACV of the loss.

23.    In order to recover the RCV of their covered losses, Plaintiff and other proposed class members are required to pay the out of pocket the difference between the cost of materials and labor necessary to repair or replace the damaged property and the depreciated ACV payment they received from Defendant.  While an insurer may lawfully depreciate material costs in calculating the amount of an ACV payment owed to an insured, it may not depreciate labor costs.  Defendant's failure to pay the full cost of the labor necessary to repair or replace Plaintiff's damaged property in the ACV payments left Plaintiff under-indemnified and underpaid for his losses.

24.    Defendant materially breached its duty to indemnify Plaintiff by depreciating labor costs associated with repairs to the Insured Property in the ACV payments, thereby paying Plaintiff less than what he was entitled to receive under the terms of the insurance contract.

25.    The Ohio Department of Insurance has indicated that it is inappropriate and contrary to industry practice to depreciate labor costs when determining the ACV of structural damage claims.

### Class Action Allegations

26.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on his own behalf and on behalf and all others similarly situated.  This action satisfies the Rule requirements of commonality, numerosity, and superiority.

27.    The proposed class which Plaintiff seeks to represent is defined as follows:

> All persons and entities that received "actual cash value" payments, directly or indirectly, from Auto-Owners for loss or damage to a dwelling, business, or other structure located in the State of Ohio, such payments arising from events that occurred from February 22, 2018 through the date of trial of this Action, where the

cost of labor was depreciated. Excluded from the Class are: (1) all persons and entities who received an actual cash value payment from Auto-Owners in the full amount of insurance shown on the declarations page; (2) Auto-Owners and its affiliates, officers, and directors; (3) members of the judiciary and their staff to whom this action is assigned; and (4) Plaintiff's counsel.

28. The members of the proposed class are so numerous that joinder of all members is impractical. Plaintiff reasonably believe that hundreds if not thousands of people geographically dispersed across Ohio have been damaged by Defendant's actions. The names and addresses of the members of the proposed class are identifiable through records maintained by Defendant, and proposed class members may be notified of the pendency of this action by mailed, published and/or electronic notice.

29. Common questions of law and fact exist as to all proposed class members and predominate over any questions affecting only individual proposed class members. The questions of law and fact common to the proposed class include, but are not limited to:

A. Whether Defendant's insurance policies allow Defendant to depreciate labor in calculating ACV payments for covered losses;

B. Whether Defendant's insurance policies are ambiguous concerning the depreciation of labor costs in calculating ACV payments, and if so, how Defendant's insurance policies should be interpreted;

C. Whether Defendant's depreciation of labor costs in making ACV payments for covered losses is a breach of the insurance contracts issued by Defendant to Plaintiff and other proposed class members.

D. Whether Plaintiff and other proposed class members have been damaged by Defendant's breaches, as alleged herein, and if so:

1. What is the nature and extent of those damages; and

2. What relief should be awarded to Plaintiff and other proposed class members.

30. Plaintiff's claims are typical of the claims of all the proposed class members, as they are all similarly affected by Defendant's custom and practice of unlawful and unjust conduct

and their claims are based on such conduct.  Further, Plaintiff's claims are typical of the claims of

all proposed class members because their claims arise from the same or similar underlying facts

and are based on the same factual and legal theories.  Plaintiff is no different in any material respect

from any other member of the proposed class – all members of the proposed class had labor

unlawfully depreciated by Auto-Owners.

31.     Plaintiff and their counsel will fairly and adequately protect the interests of the

members of the proposed class.  Plaintiff's interests do not conflict with the interests of the class

they seek to represent.  Plaintiff has retained counsel who are competent and experienced in class

action litigation and complex insurance-related cases and will fairly and adequately represent the

interests of the proposed class.  Plaintiff and their counsel will prosecute this action vigorously.

32.     A class action is superior to all available methods for the fair and efficient

adjudication of this controversy.  Joining all proposed class in one action is impracticable, and

prosecuting individual actions is not feasible.  The size of the individual claims is likely not large

enough to justify filing a separate action for each claim.  For many, if not most class members, a

class action is the only procedural mechanism that will afford them an opportunity for legal redress

and justice.  Even if proposed class members had the resources to pursue individual litigation, that

method would be unduly burdensome to the courts in which such cases would proceed.  Individual

litigation exacerbates the delay and increases the expense for all parties, as well as the court system.

Moreover individual litigation could result in inconsistent adjudications of common issues of law

and fact.

33.     In contrast, a class action will minimize case management difficulties and provide

multiple benefits to the litigating parties, including efficiency, economy of scale, unitary

adjudication with consistent results and equal protection of the rights of Plaintiff and proposed

class members. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

34. No unusual difficulties are anticipated in the management of this case as a class action.

35. Class certification is further warranted because Defendant has acted or refused to act on grounds that apply generally to the proposed class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the proposed class as a whole.

## **Count I – Breach of Contract**

36. Plaintiff hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

37. Defendant entered into policies of insurance with Plaintiff and other members of the proposed class. These policies govern the relationship between Defendant and Plaintiff and other proposed class members, as well as the manner in which claims for covered losses are handled.

38. The insurance policies at issue were drafted by Defendant and are essentially identical in all respects material to this litigation.

39. Plaintiff and other proposed class members complied with all material provisions and fulfilled their respective duties with regard to their policies.

40. The policies of insurance Defendant issued to Plaintiff and other proposed class members state that in the event of a loss Defendant may fulfill its initial contractual obligation to an insured party by paying the ACV of the loss. At all times relevant hereto, Defendant's custom and practice has been, and is, to make such payments based upon Defendant's calculation of the ACV for the loss, net of any applicable deductible.

41.     Defendant breached its contractual duty to pay Plaintiff and other proposed class members the ACV of their claims by unlawfully depreciating labor costs.

42.     Defendant's actions in breaching its contractual obligations to Plaintiff and other proposed class members benefitted, and continue to benefit, Defendant.  Likewise, Defendant's actions damaged, and continue to damage, Plaintiff and other proposed class members.

43.     Defendant's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiff and other proposed class members.

44.     Accordingly, Plaintiff and other proposed class members are entitled to recover damages sufficient to make them whole for the amounts Defendant unlawfully withheld from their ACV payments as labor cost depreciation.

### **Demand for Relief**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, request that the Court grant the following relief:

A.      Certify that this lawsuit may be prosecuted as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.      Appoint Plaintiff and Plaintiff's counsel to represent the proposed class;

C.      Declare that Defendant has breached its contractual obligations to the Plaintiff and the proposed class by depreciating labor costs;

D.      Award Plaintiff and the proposed class damages in an amount equal to the total amount of depreciated labor costs withheld on Plaintiff's and proposed class members' claims that has not been paid to Plaintiff and proposed class members;

10

E.     Award Plaintiff and the proposed class prejudgment and post-judgment interest on their liquidated and unliquidated damages;

F.     Enjoin Defendant from engaging in the unlawful and unjust conduct complained of herein;

G.     Award the proposed class all expenses and costs of this action, and require Auto-Owners to pay the costs and expenses of class notice and claims administration;

H.     Trial by Jury; and

I.     Any and all other relief to which Plaintiff and the other proposed class members appear to be entitled.

Respectfully submitted,

*/s/ Stephen G. Whetstone*
STEPHEN G. WHETSTONE (0088666)
Email: steve@whetstonelegal.com
**Whetstone Legal, LLC**
P.O. Box 6
2 N. Main Street, Unit 2
Thornville, Ohio 43076
Telephone: 740.974.7730
Facsimile: 614.829.3070

and

M. AUSTIN MEHR (KY Bar 47064)
PHILIP G. FAIRBANKS (KY Bar 91994)
ERIK D. PETERSON (KY Bar 93003)
**Mehr, Fairbanks & Peterson**
 **Trial Lawyers, PLLC**
201 West Short Street, Suite 800
Lexington, Kentucky 40507
Telephone: 859-225-3731
Facsimile: 859-225-3830
Email: amehr@austinmehr.com
Email: pgf@austinmehr.com
Email: edp@austinmehr.com

11

*Counsel for Plaintiff and*
*the Proposed Class*