**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| MARY DONOFRIO, Individually, and on Behalf of All Other Ohio Residents Similarly Situated, | : | Case No.: 3:19-cv-58 |
| | : | JUDGE WALTER H. RICE |
| Plaintiff, | : | |
| v. | : | |
| AUTO-OWNERS (MUTUAL) INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | | |

---

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE
COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**

**ORAL ARGUMENT REQUESTED**

---

## INTRODUCTION

Plaintiff Mary Donofrio is an Auto-Owners policyholder.  After her aging roof was damaged by wind, Plaintiff submitted a claim for its actual cash value ("ACV").  Pursuant to Ohio law and the express terms of her policy, Auto-Owners calculated Plaintiff's ACV payment by first estimating the cost to install a *new* roof, and then subtracting depreciation to account for the fact that Plaintiff's roof was over fifteen years old.  In doing so, Auto-Owners applied depreciation to the total cost of a new roof, including the raw materials (like shingles) and the labor necessary to install them.  (Auto-Owners also included, but did not depreciate, the cost to remove debris from the damaged property.)

In this putative class action, Plaintiff seeks to revive a legal theory that has been twice rejected in Ohio federal court.  Plaintiff does not dispute that Auto-Owners was entitled to

1

subtract depreciation when calculating her ACV payment. Instead, Plaintiff alleges that Ohio law permits insurers to depreciate only a portion of an item's total cost—namely, the cost of raw materials—and thus prohibits insurers from depreciating the cost of labor. Plaintiff's breach of contract claim is based entirely on this allegation.

Plaintiff's exact legal theory was rejected by the Northern District of Ohio in *Cranfield v. State Farm Fire & Casualty Co.*, 340 F. Supp. 3d 670 (N.D. Ohio 2018), and *Perry v. Allstate Indemnity Co.*, No. 1:16-cv-01522, 2018 WL 6169311 (N.D. Ohio Nov. 26, 2018). In those cases, State Farm and Allstate, respectively, applied depreciation to labor costs when calculating ACV. Like Plaintiff here, the policyholders sued for breach of contract, alleging that Ohio law prohibits the depreciation of labor costs. The Northern District of Ohio disagreed. Observing that "the plain meaning of depreciation is inclusive of labor," the court held that the insurers' policies (which did not define "depreciation") and Ohio law unambiguously permit the depreciation of materials and labor costs when calculating ACV payments. *Cranfield*, 340 F. Supp. 3d at 673; *Perry*, 2018 WL 6169311, at *3. The court thus dismissed both complaints.

The same result is warranted here. Neither Ohio law nor Plaintiff's insurance policy requires labor costs to be excluded from depreciation when calculating actual cash value. Plaintiff's suggestion otherwise is not only contrary to settled law and the plain terms of her insurance policy, it would lead to the absurd result that even a structure with no useful life remaining would have substantial cash value. Plaintiff's theory would also defeat the purpose of ACV coverage by placing the insured in a *better* position than before the loss.

In short, Plaintiff has failed to state a claim, and her Complaint should be dismissed. In the alternative, if the Court has any reservations about whether *Cranfield* and *Perry* were correctly decided, Auto-Owners requests that the Court certify the question of whether labor

2

costs are depreciable to the Supreme Court of Ohio, consistent with Rule 9.01(A) of the Ohio Supreme Court Rules of Practice.

## BACKGROUND

### *The Policy*

Auto-Owners' HO-3 policy includes a replacement cost benefit, under which the insured may choose to repair or replace the damaged property and recover "the full cost to repair or replace the damaged part of such covered property."  Compl. Ex. A (Policy) at 22.  The replacement cost is known as the "replacement cost value," or "RCV," and includes 100% of the repair or replacement cost of the damaged property (*i.e.* the amount that the insured actually pays to repair or replace the damaged property with equivalent construction for equivalent use), not to exceed the policy limit, and minus the deductible.  Compl. ¶ 18 & Ex. A at 22.  Thus, the insured can replace the damaged property and have no out-of-pocket expenses (except a deductible), so long as the replacement cost is less than the policy limit.  Alternatively, the insured may choose *not* to repair or replace the damaged property and instead recover its actual cash value.  Compl. ¶ 19 & Ex. A at 13.  The HO-3 policy does not define ACV, but repeatedly states that ACV "includes a deduction for depreciation."  *E.g.*, Compl. Ex. A at 22, 38.

Fifteen years after Plaintiff's roof was constructed, Plaintiff's HO-3 policy ("the Policy") was amended to modify the terms above.  Compl. Ex. A at 4, 38–39.  As modified, the Policy provided ACV coverage (but not full replacement coverage) for roof surfacing damaged by wind or hail.  *Id.*  RCV recovery was still available for (1) damage to other parts of the dwelling, and (2) roof damage caused by forces other than wind or hail.  *Id.*

3

***Plaintiff's Claim***

In April 2018, a windstorm caused damage to Plaintiff's roof. Compl. ¶ 13. Plaintiff submitted a claim under her policy. *Id.* ¶¶ 13. After inspecting the property, Auto-Owners' adjuster first estimated a replacement cost of $6,333.87. *Id.* ¶ 15 & Compl. Ex. B (Estimate) at 4. The adjuster calculated the roof's net ACV by subtracting depreciation equal to $2,729.02 and Plaintiff's $500 deductible. Compl. ¶¶ 15–16; Ex. B at 4. In so doing, Auto-Owners depreciated "both material costs and labor costs associated with repairs to the house," Compl. ¶ 17, but did not depreciate the estimated cost of removing debris from the damaged property, *id.* Ex. B at 2. This resulted in a net ACV payment of $3,104.85. Compl. ¶ 16; Ex. B at 2, 4.

Plaintiff alleges that "Defendant breached its contractual duty to pay Plaintiff and other proposed class members the ACV of their claims by unlawfully depreciating labor costs." Compl. ¶ 41. Plaintiff brings this claim on behalf of herself as well as members of the following putative class:

> All persons and entities that received "actual cash value" payments, directly or indirectly, from Auto-Owners for loss or damage to a dwelling, business, or other structure located in the State of Ohio, such payments arising from events that occurred from February 22, 2018 through the date of trial of this Action, where the cost of labor was depreciated. Excluded from the Class are: (1) all persons and entities who received an actual cash value payment from Auto-Owners in the full amount of insurance shown on the declarations page; (2) Auto-Owners and its affiliates, officers, and directors; (3) members of the judiciary and their staff to whom this action is assigned; and (4) Plaintiff's counsel.

Compl. ¶ 27.

Auto-Owners now moves to dismiss the Complaint for failure to state a claim.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The purpose of a motion to dismiss under **Rule 12(b)(6)** "is to allow a [party] to test whether, as a matter of law, the [opposing party] is entitled to legal relief even if everything alleged in the [claim] is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1 993).  On a motion to dismiss, courts must accept factual allegations as true, but they are "not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quotation and citation omitted).

## ARGUMENT

Plaintiff claims that Auto-Owners paid her "less than what [she] was entitled to receive under the terms of the [Policy]" solely because Auto-Owners improperly "depreciat[ed] labor." Compl. ¶¶ 24, 41.  Both Ohio law and the Policy, however, permit Auto-Owners to depreciate a property's full replacement cost (including the cost of labor) when calculating ACV. Additionally, even if Auto-Owners' calculation of depreciation is impermissible, Plaintiff has not alleged sufficient facts to show that Auto-Owners paid her less than she was owed.  For each of these reasons, Plaintiff has failed to state a claim.

I.      **Under Ohio law, insurers may apply depreciation to a property's total replacement cost.**

Without citation to any authority, Plaintiff alleges that "Ohio law allows an insurer to depreciate the value of building materials, but does not allow the depreciation of the cost of labor."  Compl. ¶ 5.  This legal conclusion is entitled to no weight on a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  It is also wrong.

5

As an initial matter, Plaintiff's theory has no support in Ohio case law.  Under Ohio law,[1] ACV is calculated as either the market value of the damaged property at the time of the loss or *the repair or replacement cost minus depreciation*, unless otherwise defined in the policy.  *E.g.*, *Schaller.*, 496 F. Supp. 2d at 897; *Asmaro v. Jefferson Ins. Co. of New York*, 574 N.E.2d 1118, 1122 (Ohio Ct. App. 1989); *Modesty v. Scottsdale Surplus Lines*, No. 86912, 2006 WL 2374311 (Ohio Ct. App. Aug. 17, 2006).  For partial loss claims like Plaintiff's, where only part of a building is damaged, courts recognize that ACV should be calculated as "replacement cost minus depreciation, and not market value."  *Paterson-Leitch Co. v. Ins. Co. of N. Am.*, 366 F. Supp. 749, 756 (N.D. Ohio 1973).  This reflects the fact that there is no marketplace from which to determine the pre-loss value of, for example, the 10-year-old roof installed on one home or the 15-year-old siding installed on another.  Critically, although multiple cases in Ohio define ACV as including depreciation, not one holds that an insurer may depreciate only part of a property's replacement cost.

Plaintiff's theory also lacks support in Ohio insurance regulations.  Section 3901-1-54 of the Ohio Administrative Code sets forth "uniform minimum standards for the investigation and disposition of property and casualty claims arising under insurance contracts . . . issued to residents of Ohio."  Ohio Admin. Code § 3901-1-54(A).  That regulation provides that "[t]he insurer shall determine actual cash value by determining the replacement cost of property at the time of loss, including sales tax, less *any* depreciation."  *Id.* § 3901-1-54(I)(2)(a) (emphasis added).  Had the regulators intended to ban the depreciation of labor costs, they would have stated so clearly.  *See, e.g.*, Cal. Code Regs. tit. 10, § 2695.9(f)(1) (stating that where "the

---

[1] Federal courts look to state law when the term ACV is undefined in a policy.  *See, e.g.*, *Schaller v. Nat'l All. Ins. Co.*, 496 F. Supp. 2d 890, 897 (S.D. Ohio 2007); *Cranfield*, 340 F. Supp. 3d at 674; *Perry*, 2018 WL 6169311, at *3.

6

measure of recovery is determined by the actual cash value of the damaged or destroyed property . . . the expense of labor . . . shall not be subject to depreciation or betterment").  Instead, the Ohio regulators included a reference to "any" depreciation, meaning all kinds of depreciation. Thus, as the court held in *Cranfield* and *Perry*, the plain meaning of ACV under the Ohio regulation "requires an inclusive definition of depreciation."  *Cranfield*, 340 F. Supp. 3d at 675; *Perry*, 2018 WL 6169311, at *4.

Lastly, Ohio courts in other contexts have recognized the propriety of depreciating labor costs.  In a case involving the calculation of child support, the Ohio Court of Appeals concluded that it would be "fundamentally unsound" to exclude labor costs when depreciating replacement business equipment:

> [A]ppellant's attempt to separate the labor costs from the material costs of repair items is fundamentally unsound. . . .  Both labor and materials were both necessary to replace the concrete, and the costs of both are reflected in the long-term economic value of such improvements.  Thus, the total cost of replacing the concrete, whether designated as labor or materials, should be subject to depreciation deductions.

*Heflrich v. Helfrich*, No. 97APF08-975, 1998 WL 63528, at *3 (Ohio Ct. App. Feb. 10, 1998). Although *Helfrich* is an unpublished Court of Appeals opinion, it is entitled to substantial weight.  "Where a state's highest court has not spoken on a precise issue, a federal court may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. . . .  This rule applies regardless of whether the appellate court decision is published or unpublished."  *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir. 1989) (citations omitted)); *accord N.Y. Life Ins. Co. v. Wittman*, 813 F. Supp. 1287, 1295–96 (N.D. Ohio 1993).

7

Plaintiff's breach of contract claim is premised entirely on the notion that Ohio law "does not allow the depreciation of the cost of labor."  Compl. ¶ 5.  For the reasons above, Plaintiff's theory is plainly incorrect.  This alone warrants dismissal of the Complaint.

II.     **The Policy permits Auto-Owners to calculate depreciation on the entire replacement cost of the damaged property.**

To the extent Plaintiff contends that so-called "labor depreciation" is not permitted under the terms of the Policy itself, Plaintiff's argument is equally flawed.  Nothing in the Policy purports to limit the items subject to depreciation for purposes of calculating ACV.  Thus, as with the policies at issue in *Cranfield* and *Perry*, the only reasonable interpretation of the Policy is that Auto-Owners may calculate depreciation based on the total cost of repair or replacement, not some component thereto.

A.     **The terms "actual cash value" and "depreciation" are not ambiguous simply because they are undefined.**

Although Plaintiff does not allege that the terms "actual cash value" or "depreciation" are ambiguous, the Complaint suggests that whether an ambiguity exists is a question common to the putative class.  *See* Compl. ¶ 29(B) (alleging that "[t]he questions of law and fact common to the proposed class include . . . "[w]hether Defendant's insurance policies are ambiguous concerning the depreciation of labor costs in calculating ACV payments, and if so, how Defendant's insurance policies should be interpreted").  To the extent Plaintiff contends that the lack of a definition renders "actual cash value" or "depreciation" ambiguous, her position is contrary to Ohio law.

Under Ohio precedent, if the terms of an insurance policy are "clear and unambiguous," then a court must give effect to those terms.  *Long Beach Ass'n, Inc. v. Jones*, 697 N.E.2d 208, 210 (Ohio 1998).  A policy is only ambiguous if a provision is "*reasonably* susceptible of more

8

than one interpretation." *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988) (emphasis added). The "mere potential for ambiguity" is insufficient to render a clause subject to more than one reasonable interpretation. *Lager v. Miller-Gonzalez*, 896 N.E.2d 666, 671 (Ohio 2008).

Importantly, the "absence of a definition in an insurance contract" does not render the undefined term ambiguous. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995). Rather, undefined terms must be "given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the agreement." *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 953 N.E.2d 285, 292–93 (Ohio 2011); *see Auto-Owners Ins. Co. v. Merillat*, 854 N.E.2d 513, 517 (Ohio Ct. App. 2006). Moreover, where a term is undefined in an insurance policy, but defined by judicial decision, the term is not ambiguous. *See Lyttle v. Progressive Cas. Ins. Co.*, No. 73620, 1999 WL 61009, at *6 (Ohio Ct. App. Feb. 4, 1999) (concluding that "there can be no ambiguity within the meaning of the rule for strict construction against the insurer, when a term has been judicially defined").

As discussed above, the term "actual cash value" has been clearly defined by Ohio case law and regulation to mean replacement-cost-less-depreciation, with no limitation on the cost components subject to depreciation. *See Paterson-Leitch Co.*, 366 F. Supp. at 756; Ohio Admin. Code § 3901-1-54(I)(2)(a). By stating that ACV "includes a deduction for depreciation," with no limit on which costs can be depreciated, Auto-Owners' HO-3 policy tracks judicial and regulatory definitions of ACV. Therefore, like the policies at issue in *Cranfield* and *Perry*, Plaintiff's Policy is thus not ambiguous simply because it lacks formal definitions for ACV and depreciation. *Cranfield*, 340 F. Supp. 3d at 673–75; *Perry*, 2018 WL 6169311, at *2–4.

9

**B.      Plaintiff's interpretation of the Policy is unreasonable.**

Under Ohio law, an insurance contract is ambiguous only if it is "subject to more than one *reasonable* interpretation." *Cranfield*, 340 F. Supp. 3d at 673 (emphasis added).  Here, the only reasonable interpretation of Plaintiff's Policy is that Auto-Owners may apply depreciation to a property's entire replacement cost.  Plaintiff's suggestion to the contrary fails for at least four reasons.

*First*, the Policy never mentions "labor depreciation," nor does it suggest that only the cost of materials is subject to depreciation.  Thus, to the extent Plaintiff claims the Policy can be interpreted as providing only for the depreciation of materials costs, Plaintiff reads into the Policy a distinction that is notably absent.  *See Herder v. Herder*, 288 N.E.2d 213, 215 (Ohio Ct. App. 1972) (prohibiting courts from "read[ing] into [contracts] terms or language not there").

*Second*, the ordinary understanding of "depreciation"—and the only reasonable interpretation of that word as it appears in the Policy—is an asset's total decline in value over time.  As the Eighth Circuit recently observed:  "Black's Law Dictionary lists no fewer than ten different depreciation methods to estimate the decline in an asset's value over time.  All deduct depreciation from the initial *full* cost of the damaged asset, because that was the insured's investment."  *In re State Farm Fire & Cas. Co.*, 872 F.3d 567, 574 (8th Cir. 2017) (emphasis added) (referencing BLACK'S LAW DICTIONARY (9th ed. 2004)).  The Northern District of Ohio made the same observation in *Cranfield* and *Perry*, concluding that "depreciation commonly focuses on the value of the whole product, rather than the component parts."  *Cranfield*, 340 F. Supp. 3d at 673–74; *Perry*, 2018 WL 6169311, at *3.  A roof is a "finished product"—"the *result* or physical manifestation of combining knowhow, labor, [and] physical materials."  *Papurello v. State Farm Fire & Cas. Co.*, 144 F. Supp. 3d 746, 770 (W.D. Pa. 2015) (emphasis in original).

10

Thus, as the Northern District held, "the reasonable insured individual should conclude that labor is included in depreciation." *Cranfield*, 340 F. Supp. 3d at 676–77; *Perry*, 2018 WL 6169311, at *5.

*Third*, Plaintiff's interpretation of "depreciation" is at odds with how that term is understood in other contexts.  In tax law, for example, the value of a building is determined by summing the initial or "acquisition" costs incurred when the building was first acquired or constructed, and then deducting depreciation from that *entire* amount.  Under IRS guidelines, the basis of tangible property includes the cost of "[l]abor and materials."  I.R.S. Publ'n 551 (Rev. Dec. 2018), Cat. No. 15094C (Dec. 10, 2018) ("If you build property or have assets built for you, your expenses for this construction are part of your basis.  Some of these expenses include the following costs[:]  Land[,] Labor and materials . . . .").[2]  Internal Revenue Code § 167 then makes clear that depreciation is applied to a home's *entire* basis.  *See* 26 U.S.C. § 167(a), (c)(1). Similarly, appraisal literature indicates that "[a]ppraisers estimate the cost to construct existing structures and site improvements (including direct costs, indirect costs, and an appropriate entrepreneurial incentive or profit . . . )."  Appraisal Institute, The Appraisal of Real Estate 562 (14th ed. 2013).  "Direct costs" include "[l]abor used in construction."  *Id.* 572; *see also id*. at 571 (same).  "Appraisers then deduct *all depreciation* in the property improvements from the cost of the new structure as of the effective appraisal date."  *Id.* at 562 (emphasis added); *id.* at 568–69 (detailing depreciation deductions).

*Fourth*, Plaintiff's interpretation of "depreciation" would lead to illogical results. Consider the following example:  suppose a deck with a useful life of twenty years is destroyed

---

[2] *See also* I.R.S. Publ'n 527, Cat. No. 15052W (Feb. 23, 2018) ("Add to the basis of your property the amount an addition or improvement actually cost you . . . .  This includes all direct costs such as material and *labor*, but does not include your own labor." (emphasis added)).

CORE/3503246.0008/152933606.1

by wind fifteen years after it was installed (*i.e.*, with only 25% of its useful life remaining). Suppose also that a new deck would cost $10,000, consisting of $5,000 in materials and $5,000 in labor. Depreciating the entire cost to replace the deck would generate an actual cash value of $2,500—a reasonable valuation of a deck nearing the end of its useful life. Plaintiff's method, by contrast, would value the 15-year-old deck at $6,250—over 60% of the cost to build a *brand new* deck—even though the deck had only 25% of its useful life remaining. Now suppose the same deck was destroyed on the last day of its useful life. Under Plaintiff's approach, the homeowner would be entitled to an ACV payment of $5,000, even though the deck was essentially worthless at the time of loss.

In both examples, Plaintiff's interpretation of "depreciation" would place the homeowner in a better position than before the loss. This result is squarely at odds with the principle that "[t]he purpose of actual cash value coverage is indemnification . . . to make the insured whole, but never to benefit the insured because the loss occurred." *D & S Realty, Inc. v. Markel Ins. Co.*, 816 N.W.2d 1, 11 (Neb. 2012). Moreover, as the second example illustrates, Plaintiff's approach to depreciation would lead to the illogical result that property can never have a value of zero. Indeed, under Plaintiff's approach, *no* property of *any* age or *any* condition could *ever* have a value less than the cost of labor to rebuild it. That defies common sense, for it is indisputable that buildings can wear out over time.

**C.    The majority of courts have rejected Plaintiff's interpretation of "depreciation."**

Unsurprisingly, the majority of courts to address the issue have concluded that Plaintiff's interpretation of "depreciation" is unreasonable. As the Northern District of Ohio reasoned in *Cranfield* and *Perry*:

> Placing the term depreciation within the definition of ACV as used in the contract at issue, it is clear that depreciation is intended to include labor as well as materials.  The property that the contract insures is [Plaintiff's] home.  The policy does not separately insure the labor and building materials, but the sum total of these parts.  Because the Court cannot create an ambiguity when none exists, the Court finds that the term ACV is unambiguous and that [the insurer's] inclusion of labor in depreciation did not breach the contract.

*Cranfield*, 340 F. Supp. 3d at 674 (citations omitted); *Perry*, 2018 WL 6169311, at *3; *see also*

*Accardi v. Hartford Underwriters Ins. Co.*, No. 18 CVS 2162, 2018 WL 5273971, at *6 (N.C.

Super. Oct. 22, 2018); *Graves v. Am. Family Mut. Ins. Co.*, 686 F. App'x 536, 540 (10th Cir.

2017); *Riggins v. Am. Family Mut. Ins. Co.*, 281 F. Supp. 3d 785, 789 (W.D. Mo. 2017); *Ware v.

Metro. Prop. & Cas. Ins. Co.*, 220 F. Supp. 3d 1288, 1291 (M.D. Ala. 2016); *Basham v. United

Servs. Auto. Ass'n*, No. 16-cv-03057-RBJ, 2017 WL 3217768, at *4 (D. Colo. July 28, 2017);

*Henn v. Am. Family Mut. Ins. Co.*, 894 N.W.2d 179, 190 (2017); *Goff v. State Farm Fla. Ins.

Co.*, 999 So. 2d 684, 689–90 (Fla. Dist. Ct. App. 2008); *Tolar v. Allstate Texas Lloyd's Co.*, 772

F. Supp. 2d 825, 831–32 (N.D. Tex. 2011); *Branch v. Farmers Ins. Co.*, 55 P.3d 1023, 1027

(Okla. 2002).

Although some courts in other jurisdictions have concluded that depreciation is

ambiguous, those decisions are contra to the weight of authority, poorly reasoned, or otherwise

distinguishable.  Several courts, for example, have reasoned that "depreciation" excludes so-

called "labor depreciation" because labor supposedly does not decline in value based on use,

wear, obsolescence, or age.  *See e.g.*, *Hicks v. State Farm Fire & Cas. Co.*, 751 F. App'x 703,

709–10; (6th Cir. 2018); *Lammert v. Auto-Owners (Mut.) Ins. Co.*, 572 S.W.3d 170 (Tenn.

2019); *Adams v. Cameron Mut. Ins. Co.*, 430 S.W.3d 675, 678 (Ark. 2013), *superseded by

statute*, Ark. Code Ann. § 23-88-106(a)(2).  But that is a red herring.  The question is not

whether labor "depreciates" in the abstract, but how to measure a structure's decrease in value

13

over time.  *See In re State Farm*, 872 F. 3d at 576 ("The question is whether depreciating what a contractor will charge to replace the partial loss is a reasonable method of estimating the difference in value of the property immediately before and immediately after the loss." (quotation omitted)).  Because any structure is the product of both labor and materials, applying depreciation to just one will necessarily understate the structure's decline in value—and overstate the ACV.  *Redcorn v. State Farm Fire & Cas. Co.*, 55 P. 3d 1017, 1021 (Okla. 2002) (holding that policyholder "insured a roof surface, not two components, manual and labor," and thus construing the policy to prohibit depreciation of labor costs "would unjustly enrich the policy holder").

Several decisions finding Plaintiff's interpretation to be reasonable have indicated that depreciation of total replacement cost results in under-indemnification.  *Hicks*, 751 F. App'x at 709; *Lammert*, 572 S.W.3d 170.  But that is incorrect.  As the examples above demonstrate, applying depreciation to the entire replacement cost of a damaged property generates an ACV payment consistent with the value of the property at the time of loss and is further consistent with the specific terms of the Plaintiff's policy in this case.  Plaintiff's method, by contrast, results in over-indemnification by paying insureds more than their property was worth.

Lastly, the only Sixth Circuit case on point, *Hicks v. State Farm*, is distinguishable and applies Kentucky law.  There, the policy's definition of ACV incorporated a Kentucky regulation.  *Hicks*, 751 F. App'x at 707–08.  The Court held that the regulation was ambiguous in large part because (a) the insurer's position would have rendered a portion of the regulation meaningless and (b) the regulation was to be broadly construed in favor of the insured.  *Id.* at 708, 710–11.  Because no such regulation is incorporated into the Policy here, *Hicks*' rationale is

14

inapplicable.  Moreover, the court in *Hicks* relied on a Kentucky regulation rather than the Ohio common law principles that apply here.

For these reasons, this Court should adopt the majority view, consistent with Ohio common law, that the term "depreciation" unambiguously includes depreciation of the entire replacement cost.

## III.    The Court should certify this matter to the Ohio Supreme Court rather than create a split of authority in the federal district courts.

*Cranfield* and *Perry* correctly held that Plaintiff's "labor depreciation" theory is without support in Ohio law.  If this Court has any reservations, however, the Court should certify the question rather than create a split of authority in Ohio federal court on an issue otherwise controlled by state law.

Federal courts may certify a question to the Supreme Court of Ohio if "there is a question of Ohio law that may be determinative of the proceeding and for which there is no controlling precedent in the decisions of this Supreme Court."  Ohio Sup. Ct. Prac. R. 9.01(A).  Certifying questions of state law promotes state sovereignty and judicial economy.  *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 77 (1997) (per curiam); *Scott v. Bank One Trust Co.*, 577 N.E.2d 1077, 1079–80 (Ohio 1991).  Certification also helps avoid "the potential for 'friction-generating error,'" *Planned Parenthood of Cincinnati Region v. Strickland*, 531 F.3d 406, 410 (6th Cir. 2008), and "conflicting federal interpretations as to an important state law question that would otherwise evade state court review," *In re Trahan*, 444 B.R. 865, 867 (Bankr. S.D. Ohio 2011) (quotation omitted); *see also Geib v. Amoco Oil Co.*, 29 F.3d 1050, 1060 (6th Cir. 1994) (encouraging certification where conflicting interpretations existed between federal courts in interpreting state law).

15

Here, the Northern District of Ohio has already ruled that insurers may depreciate labor costs when calculating ACV payments.  *Cranfield*, 340 F. Supp. 3d at 673–77; *Perry*, 2018 WL 6169311, at *3–6.  If this Court is uncertain whether *Cranfield* and *Perry* accurately interpret Ohio state law, judicial economy would be served by certifying the question to the state supreme court.  Doing so would not only avoid a split of authority between the Northern and Southern Districts —and the inevitable forum-shopping that would follow—but would allow Ohio courts the final say on this important issue of state law.  Moreover, a ruling in Auto-Owners' favor would be determinative of Plaintiff's claims, as her entire case is premised on the notion that insurers may not depreciate labor costs.

Auto-Owners recognizes that the Ohio Supreme Court has declined to accept certification of this issue on one prior occasion, but that decision occurred before the Northern District issued its opinions in *Cranfield* and *Perry*. Resolution by the state court was therefore unnecessary to avoid a conflict of authority in federal courts.  Auto-Owners also submits that *Cranfield* and *Perry* were correctly decided.  If, however, the Court has doubts that insurers may depreciate labor costs under Ohio law, Auto-Owners respectfully asks the Court to certify this question to the Supreme Court of Ohio.

## IV.    Oral argument is appropriate in this case.

The nuances of the Ohio regulatory and statutory frameworks that specifically permit the depreciation of labor costs when calculating ACV payments are voluminous and complex.  So too is the Ohio case law that supports this interpretation.  Further, the interplay of these frameworks with the Northern District of Ohio authority of *Cranfield* and *Perry,* as well as the Sixth Circuit authority of *Hicks*, warrants further discussion with the Court in the form of oral argument regarding the merits of this motion and the relief requested herein.

16

Dated: June 10, 2019                Respectfully submitted,

                                    s/ Glen R. McMurry
                                    Glen R. McMurry (0082600)
                                    TRIAL ATTORNEY
                                    Dinsmore & Shohl LLP
                                    1 South Main Street, Suite 1300
                                    Dayton, Ohio 45402
                                    Ph:     (937) 449-6400
                                    Fx:     (937) 449-2836
                                    Email: glen.mcmurry@dinsmore.com


                                    Todd A. Noteboom (MN #240047) (pro hac vice)
                                    Peter J. Schwingler (MN #0388909) (pro hac vice)
                                    Stinson LLP
                                    50 South Sixth Street, Suite 2600
                                    Minneapolis, MN 55402
                                    Telephone: (612) 335-1500
                                    Facsimile: (612) 335-1657
                                    todd.noteboom@stinson.com
                                    peter.schwingler@stinson.com


                                    *Attorneys for Defendant Auto-Owners (Mutual)
                                    Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2019, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will serve the foregoing automatically on the

following:

    Stephen G. Whetstone
    **Whetstone Legal, LLC**
    P.O. Box 6
    2 N. Main Street, Unit 2
    Thornville, Ohio 43076

CORE/3503246.0008/152933606.1

M. Austin Mehr
Philip G. Fairbanks
Erik D. Peterson
**Mehr, Fairbanks & Peterson**
**Trial Lawyers, PLLC**
201 West Short Street, Suite 800
Lexington, Kentucky 40507

*Counsel for Plaintiff and*
*the Proposed Class*

s/ Glen R. McMurry
Glen R. McMurry