UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
at DAYTON
*Electronically Filed*

| | | |
|---|---|---|
| MARY DONOFRIO | ) | |
| individually and on behalf of all | ) | |
| other Ohio residents similarly situated, | ) | Judge Walter H. Rice |
| | ) | |
| Plaintiff, | ) | Case No.: 3:19-cv-58 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AUTO-OWNERS (MUTUAL) | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

---

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

---

## I.      INTRODUCTION

Plaintiff Mary Donofrio ("Plaintiff") moves the Court for final approval of the Settlement under Federal Rule of Civil Procedure ("Rule") 23(e), and respectfully submits this Memorandum in support of her Motion. The Settlement Agreement reached between the Parties (the "Settlement") was previously filed with the Court on March 10, 2022. Dkt. 28-1. Defendant Auto-Owners (Mutual) Insurance Company ("Auto-Owners" or "Defendant") does not oppose this motion for final approval of a settlement.[1]

The proposed Settlement here is made on behalf of a class of Ohio policyholders of Defendant. For Class Members who submit claim forms, the Settlement will result in 100% net recovery of withheld Nonmaterial Depreciation for Class Members who still have outstanding labor withheld from their prior ACV claim payments, plus simple interest at the rate of 5%. For Class Members for whom all Nonmaterial Depreciation that was withheld from ACV Payments was subsequently paid, the Settlement will result in payment twenty-five dollars.

To date, **no** Class Members objected to any aspect of the Settlement, including the class relief, the request for a service award to Plaintiff in an amount no greater than $7,500, or Class Counsel's request for an amount no greater than $1,740,000 for attorneys' fees and litigation costs and expenses. Class Members' recoveries will not be reduced by the amounts of attorneys' fees, costs, litigation expenses or service awards approved by the Court.

Class Counsel, who are experienced in prosecuting labor depreciation class actions, have concluded that the Settlement is an excellent result under the circumstances and is clearly in the best interests of the Class. This conclusion is based on all the circumstances presented here: a

---

[1]   As Paragraphs 1.5-1.6 of the Settlement make clear, however, Defendant denies liability or wrongdoing, and absent settlement, intends to contest each and every claim and cause of action, including whether any aspect of this lawsuit is appropriate for certification as a litigation class.

complete analysis of all available evidence; the substantial risks, expenses, and uncertainties in continuing the litigation; the relative strengths and weaknesses of the claims and defenses asserted; the legal and factual issues presented; and past experience in litigating complex actions similar to this case.

Members of the Class appear to agree with Class Counsel's conclusion. Notice of the proposed Settlement and Claim Forms were mailed to potential Class Members and were also published on a settlement website. *See* https://www.ohdepreciationsettlement.com. The Notice apprised Class Members of their right to, and procedures for, opting out of the Settlement, objecting to the Settlement and/or objecting to Class Counsel's application for attorneys' fees, costs, and expenses. The deadlines to object and to opt-out expired on June 3, 2022. *See* Dkt. 30 at ¶¶ 10, 11. To date, **<u>no</u>** Class Members objected to any aspect of the Settlement, and **<u>only three</u>** Class Members submitted a written request for exclusion.

Accordingly, for the reasons set forth herein, Plaintiff submits that the Settlement warrants the Court's final approval and respectfully request that the Court enter the proposed Final Approval Order attached to the Parties' Settlement Agreement as Exhibit E. Dkt. 28-1, PageID.374-385.

## II.     BACKGROUND AND PROCEDURAL HISTORY

### A.  Ohio Law Concerning Labor Depreciation

This action involves allegations that Defendant breached the terms of its standard-form property insurance policies with Plaintiff and other class members by wrongfully depreciating labor costs when adjusting property loss claims in violation of Ohio law. *See Perry v. Allstate Indemn. Co.*, 953 F.3d 417 (6th Cir. 2020) ("[b]ecause Perry's interpretation of 'depreciation' is a fair reading of an ambiguous term, her interpretation prevails against the insurer. We accordingly

hold as a matter of law that it was improper for Allstate to depreciate labor costs to arrive at its net payment to Perry for the damage to her home.").

**B. The Lawsuit**

On February 25, 2019, Plaintiff commenced this Action. Dkt. 1. Plaintiff alleged that Defendant improperly depreciated the estimated cost of labor necessary to complete repairs to insured property when it calculated and issued ACV claim payments to them and other class members for structural damage losses suffered under their property insurance policies. *See generally id.* Plaintiff asserted a claim for breach of contract on behalf of herself and a class of Defendant's policyholders who received ACV payments from Defendant for loss or damage to a dwelling, business, or other structures located in Ohio. *Id.*

At the time Plaintiff filed her Complaint, only two Ohio federal district courts had ruled on the labor depreciation question, and both had ruled adverse to policyholders. *Cranfield v. State Farm Fire & Cas. Co.*, 340 F. Supp. 3d 670, 671 (N.D. Ohio 2018); *Perry v. Allstate Indem. Co.*, 2018 U.S. Dist. LEXIS 199616 (N.D. Ohio Nov. 26, 2018). On June 10, 2019, Defendant filed a motion to dismiss Plaintiff's Complaint, asking this Court to follow the district court decisions in *Cranfield* and *Perry*. Dkt. 7. Plaintiff filed her opposition to Defendant's motion to dismiss on July 1, 2019. Dkt. 9. In addition to addressing the merits of Defendant's motion to dismiss, Plaintiff suggested that the Court defer ruling on the motion until after the Sixth Circuit issued its decisions in *Cranfield* and *Perry*. Dkt. 9, PageID.120.

On March 18, 2020, the Sixth Circuit reversed the district court's decision in *Perry*. 953 F.3d 417. Then, on March 23, 2020, the Sixth Circuit issued it decision in *Cranfield*, also reversing the district court. *Cranfield v. State Farm Fire & Cas. Co.*, 798 F. App'x 929, 929 (6th Cir. 2020).[2]

---

[2] Class Counsel here are counsel of record for plaintiffs in both *Perry* and *Cranfield*.

Following the Sixth Circuit's decisions in *Perry* and *Cranfield*, on March 26, 2020, the Court denied Defendant's motion to dismiss, holding that Plaintiff's "'interpretation prevails against the insurer.'" Dkt. 17, PageID.247. On May 8, 2020, Defendant filed its Answer and affirmative defenses to the Complaint (Dkt. 19), and shortly thereafter, the Court entered its Preliminary Pretrial Conference Order Limited to Class Certification Issues. Dkt. 20. The parties then commenced discovery and Plaintiff engaged in an extended period of informal and formal discovery processes to gain information needed to pursue a motion to certify the putative class. Peterson Declaration at ¶ 14.[3] During the discovery process, Defendant produced extensive electronic claims data regarding potential putative class members throughout Ohio. *Id.* at ¶¶ 15, 20. As discovery proceeded, the parties agreed to begin settlement discussions in earnest. *Id.* at ¶ 15-16.

### C. Settlement Negotiations

Prior to reaching the proposed settlement, the parties engaged in discovery of Defendant's internal and third-party statewide claims and estimating data and documents.

Beginning in early summer 2020, the parties agreed that they should devote their resources toward attempting to resolve the case on a class-wide basis instead of continuing to engage in time consuming class certification discovery. *See* Peterson Declaration at ¶ 16.

Over the next several months, through numerous telephone conversations, the parties continued to attempt to negotiate a settlement in principle for relief to the class. *Id.* Only after the Sixth Circuit issued its opinion affirming class certification in the parallel labor depreciation case

---

[3] The Peterson Declaration, filed concurrently with this Memorandum, addresses the history of settlement negotiations for this lawsuit and the timing and structure of the settlement negotiations. Peterson Declaration at 15-28. The Declaration also addresses the considerations that led to the compromise in exchange for the proposed release. *Id.* at ¶¶ 29-35; *see also generally* Whetstone Declaration (also filed concurrently herewith).

prosecuted by Plaintiff's counsel here, *Hicks v. State Farm Fire and Cas. Co.*, 965 F.3d 452 (6th Cir. July 10, 2020), *reh'g en banc denied* (6th Cir. Aug. 26, 2020), did Defendant agree to class relief. *See* Peterson Declaration at ¶ 17. The settlement in principle did not include any agreements on attorneys' fees, litigation costs or service awards. *Id*. at ¶ 18.

Consistent with ethical standards for class action settlements, only after relief to the proposed class was agreed to, did the Plaintiff's counsel begin to negotiate the service awards, attorneys' fees, and costs to which Defendant would not object and costs that may be awarded. *See* Peterson Declaration at ¶¶ 18-21. During September 2020, the parties began to negotiate a service award, attorneys' fees and litigation costs, after obtaining further statewide data reports and making damages modelling of the aggregate values to be made available to the putative class, as well as considering likely common fund percentages. *Id*. at ¶ 19. After dozens of telephone conversations and emails between counsel, as well as the exchange of significant additional state-wide claims data, the parties reached a resolution on a service award, attorneys' fees, and litigation expenses. *Id*. at ¶¶ 19-20. Because the service award, fees, and expenses will be paid separately by the Defendant and will not reduce the recovery to the class or be subsidized by the same, Defendant was incentivized to negotiate and pay for as little fees and litigation expenses as possible. *Id*. at ¶ 43.

Class Counsel have significant experience with labor depreciation class actions, having represented insureds in numerous putative and certified class actions pending throughout the United States. *Id*. at ¶¶ 3-5. Based on this and other class action experience, Class Counsel believe the claims and allegations relating to labor depreciation asserted in the Action have significant merit. Class Counsel also recognized and acknowledged, however, that prosecuting such claims

through further fact and expert discovery, class certification motions, trial, and appeals would involve considerable uncertainty, time, and expense. *Id*. at ¶¶ 29-35.

Class Counsel have therefore concluded that it is in the best interests of the Settlement Class that the claims asserted by Plaintiff against Defendant in the Action be resolved on the terms and conditions set forth in the Settlement Agreement. *Id.* After extensive consideration and analysis of the factual and legal issues presented in the Action, and extensive and multiple settlement negotiation sessions, Class Counsel have reached the conclusion that the substantial benefits that Class Members will receive as a result of this Settlement are an excellent result in light of the risks and uncertainties of continued litigation, the time and expense that would be necessary to prosecute the Action through class certification, trial and any appeals that might be taken, and the likelihood of success at trial. *Id.*

## III.    SUMMARY OF SETTLEMENT TERMS

### A.  The Class

The "Settlement Class" is defined as:

[A]ll of Defendant's property insurance policyholders who made a Structural Loss claim: (a) for property located in the State of Ohio during the applicable Class Periods as defined in Section 2.12; that (b) resulted in an ACV Payment from which Nonmaterial Depreciation was withheld, or that would have resulted in an ACV Payment but for the withholding of Nonmaterial Depreciation causing the loss to drop below the applicable deductible . . . .

*See* Settlement Agreement ¶ 2.31.

The Settlement Class excludes: (i) policyholders whose claims arose under policy forms, endorsements, or riders expressly permitting Nonmaterial Depreciation within the text of the policy form, endorsement or rider (*i.e.*, by express use of the words "depreciation" and "labor"); (ii) policyholders who received one or more ACV Payments for claims, but not replacement cost value payments, that exhausted the applicable limits of insurance; (iii) policyholders whose claims

were denied or abandoned without ACV Payment; (iv) Defendant and its officers and directors; (v) members of the judiciary and their staff to whom this action is assigned and their immediate families; and (vi) Class Counsel and their immediate families (collectively, "Exclusions"). Settlement ¶ 2.31.1–.6.

The Class Periods mean the following time periods:

For policyholders with policies containing a one-year suit limitations period, Structural Loss claims with dates of loss on or after February 25, 2018.

For policyholders with policies containing a two-year suit limitations period, Structural Loss claims with dates of loss on or after February 25, 2017.

Settlement ¶ 2.12. The Settlement Class does *not* include any policyholder that is not eligible for a payment under this Settlement Agreement.

**B. Class Members' Recovery Under The Settlement**

The proposed Settlement provides the Defendant shall pay the following amounts to the following categories of claiming Class Members, subject to the applicable policy limits and deductibles of the Class Members' policies:

1. **Settlement Class Members With Still Withheld Non-Material Depreciation**: For the Class Members who timely file valid Claim Forms by the Claims Deadline and for whom all Nonmaterial Depreciation that was withheld from ACV Payments was *not* subsequently paid, an amount equal to 100% of the net estimated Nonmaterial Depreciation that was withheld from ACV Payments and not subsequently paid, determined as described herein and subject to applicable deductibles and limits, plus simple interest at the rate of 5% per annum on the net estimated Nonmaterial Depreciation determined under this section, from the date of the last ACV Payment to the date of Preliminary Approval.

2. **Settlement Class Members Without Still Withheld Non-Material Depreciation**: Class Members who timely file valid Claim Forms by the Claims Deadline and from whom non-material depreciation may have been initially withheld, but was subsequently repaid in full (*i.e.*, through receipt of replacement cost benefits), will receive a $25 payment.

Settlement ¶ 4.1. Attorneys' fees, costs and service awards as may be approved by this Court will not reduce Class Member's individual payments. Settlement ¶¶ 13.1, 13.5.

### C. Aggregate Value Of Relief To The Class

Based upon analysis of proprietary depreciation data from Xactanalysis® reports for Defendant's Ohio property claims, Class Counsel estimate that the aggregate amount to be made available to Class Members for payment on a claims made basis is at least $7,095,111 exclusive of "interest only" payments to Class Members, attorney's fees, litigation expenses, administration costs, and the class representative service award. Peterson Declaration ¶ 37.

### D. Range Of Individual Claim Values

The payments made available to Class Members will vary. Based on modeling using state-wide claims data spreadsheets produced by Defendant, the average potential claim recovery for claims with "still withheld" amounts of Non-Material Depreciation is believed to be approximately $1,907.00. Peterson Declaration ¶ 25. In contrast, an "interest only" Class Member would receive $25.00. *Id.*

### E. Exemplars

Plaintiff provides the following examples of potential claim payouts for hypothetical Class Members:

**Example 1**:  A class member (homeowner) had a roof claim and received an ACV payment during the Class Period in the amount of $24,378.00, from which $6,400.08 in Nonmaterial Depreciation was withheld.  If this class members submit a claim, she will receive $6,400.08 (plus interest).

**Example 2**: A class member (homeowner) had a hail damage and received an ACV payment in the amount of $6,000.00, from which $3,000.00 in Nonmaterial Depreciation was

withheld. This class member completed all repair work and later received a replacement cost benefit payment through which she recovered all $3,000.00 of the initially withheld Nonmaterial Depreciation (after submitted an additional replacement cost benefit claim). If this class member submits a claim form, she will receive $25.00 as an "interest only" class member.

## F. Disputes And Neutral Evaluator

Any Class Member may dispute the amount of the Claim Settlement Payment or denial of their claim by requesting in writing a final and binding neutral resolution by the Neutral Evaluator. Settlement ¶ 7.9. The parties have agreed that Mike Dortch of Kravitz, Brown & Dortch, LLC, in Columbus, Ohio will serve as the Neutral Evaluator. All disputes received from Class Members will be provided promptly by the Administrator[4] to Defendant's Counsel and Class Counsel, and Defendant will then have thirty (30) days to reevaluate the claim and/or supply any additional documentation. *Id.* ¶ 7.10. From there, the Neutral Evaluator shall issue a decision based only on the written submissions, and the decision of the Neutral Evaluator shall be final and binding, and is not subject to appeal or review by the Court. *Id.* ¶ 7.11.

## G. The Release Of Claims

In return for these payments, Plaintiff and the Class will provide Defendant a release narrowly tailored to the subject matter of this dispute. *See* Settlement ¶¶ 9.1-9.4. All other unrelated disputes concerning an individual claim will continue to be handled in the ordinary course. *See id.*

## H. Attorneys' Fees, Costs and Service Awards

---

[4] The Administrator is Atticus Administration, LLC ("Administrator"), a third-party administrator retained by Defendant to assist in administering and implementing the Settlement Agreement. Settlement ¶ 2.3.

Plaintiff's counsel will seek as attorneys' fees, litigation costs, and expenses, and Defendant has agreed to pay, if court approved, an amount no greater than $1,740,000. *See* Settlement ¶ 13.1. Class Members' recoveries will not be reduced or enhanced by the amounts of attorneys' fees, costs or litigation expenses paid. *Id*. at ¶ 4.1.3; Peterson Declaration ¶ 18.

Additionally, Plaintiff will also seek and Defendant has agreed to pay a service award in the amount of $7,500. Settlement ¶ 13.5. If approved, this service award will not reduce the Class Members' recoveries. *Id*. at ¶ 4.1.4.

## I. The Class Notice

Defendant agreed to separately pay for the Class Notices and the work of a claims and notice Administrator, and selected Atticus Administration, LLC to serve as the Administrator to help provide these services. On April 21, 2022, Class Notices were sent via First-Class Mail to 10,027 potential Settlement Class Members at the most current addresses in the Administrator's records.

As of June 23, 2022, the Administrator tracked 378 Class Notices that were returned as undeliverable. 42 notices were forwarded to updated addresses provided by USPS. For the remaining undeliverable Class Notices, the Administrator conducted advanced address searches and received updated address information for 188 potential Class Members. The Administrator re-mailed the Class Notice to the 188 potential Class Members with updated address information, and of these, 18 were returned as undeliverable. Thus, as of June 23, 2022, 205 notices could not be delivered to Class Members by mail. Accordingly, 9,822 potential Class Members were mailed a

Class Notice which was not returned as undeliverable, representing over 97.9% of total Class Members.[5]

A settlement website was established by the Administrator with a toll-free telephone number and .pdf copies of relevant pleadings and the Settlement. The Claim Form is easy to complete. The relevant terms and conditions of the Class Notice are set forth in the Settlement.

## IV. THE SETTLEMENT CLASS IS CERTIFIABLE UNDER FED. R. CIV. P. 23

As discussed more thoroughly below, the Settlement warrants final approval because it is fair, reasonable, and adequate, and results from extensive, arm's length negotiations by experienced counsel.

Here, as demonstrated below, even under a "rigorous analysis," the requirements of Rule 23 are easily met for the proposed *settlement* class. This is because courts routinely certify labor depreciation *litigation* classes: "Courts in jurisdictions where labor depreciation has been found to be unlawful have *uniformly found that common issues predominate* in cases challenging insurers' depreciation of labor costs" and have certified *litigation* classes. *Hicks*, 2019 U.S. Dist. LEXIS 27584, at *14 (E.D. Ky. Feb. 21, 2019) (emphasis added), *aff'd* 965 F.3d 452 (6th Cir. July 10, 2020), *reh'g en banc denied* (6th Cir. Aug. 26, 2020); *see also Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700 (5th Cir. 2020), *reh'g and reh'g en banc denied* (5th Cir. May 13, 2020); *Stuart v. State Farm Fire & Cas. Co.,* 910 F.3d 371 (8th Cir. 2018*), reh'g and reh'g en banc denied* (8th Cir. Jan. 29, 2019).

---

[5] "To comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008). "Due process does not, however, require actual notice to each party intended to be bound by the adjudication of a representative action." *Id*.

Furthermore, other courts in the Sixth Circuit have recently certified several labor depreciation *settlement* classes in the process of granting final approval of labor depreciation class settlements. For example, on May 9, 2022, the Middle District of Tennessee granted final class certification and final approval in the case captioned *Helping Hands Home Improvement, LLC v. Selective Insurance Company of South Carolina, et al.*, No. 3:20-cv-00092 (M.D. Tenn. May 9, 2022) (*Helping Hands* Dkt. 67). Similarly, on May 20, 2021, the Southern District of Ohio granted final class certification and final approval in the case captioned *Schulte v. Liberty Ins. Corp, et al.*, No. 3:19-cv-00026-TMR (S.D. Ohio May 20, 2021) (*Schulte* Dkt. 43). Prior to that, on September 21, 2020, the Western District of Tennessee granted final class certification of a labor depreciation settlement class and final approval of settlement in the case captioned *Koester, et al. v. USAA General Indemnity Company, et al.*, No. 2:19-cv-02283-SHL (W.D. Tenn. September 21, 2020) (*Koester* Dkt. 69). Similarly, on August 4, 2020, the Western District of Tennessee granted final class certification of a labor depreciation settlement class and final approval of settlement in the case captioned *Oglesby v. Erie Ins. Co.*, No. 19-02361 (W.D. Tenn. Aug. 4, 2020) (*Oglesby* Dkt. 39). Similarly, on July 6, 2020, the Western District of Tennessee granted final class certification of labor depreciation settlement classes and final approval of settlement in two separate but related cases captioned *Wade v. Foremost Ins. Co.*, No. 18-02120-JPM (W.D. Tenn. July 6, 2020) (*Wade* Dkt. 106), and *Halford v. Mid-Century Ins. Co.*, No. 19-01077-JPM (W.D. Tenn. July 6, 2020) (*Halford* Dkt. 64).[6]

---

[6] Several labor depreciation settlement classes have also been approved in other labor depreciation class actions. Final Order and Judgment, *Stuart v. State Farm Fire & Cas. Co.*, No. 4:14-cv-4001 (W.D. Ark. June 2, 2020) (granting final approval); *Baker v. Farmers Group, Inc.*, et. al, No. CV--17-03901-PHX-JJT, DE 70 (D. Ariz. Sept. 25, 2019) (same); *Braden, et al. v. Foremost Ins. Co. Grand Rapids*, No. 4:15-cv-04114-SOH, DE 119 (W.D. Ark. Oct. 9, 2018) (same); *Larey v. Allstate Prop. & Cas. Ins. Co*., No. 4:14-cv-04008-SOH, DE 79 (W.D. Ark. Feb. 9, 2018) (same);

### A. The Settlement Meets The Requirements Of Rule 23(a)

The following factors warrant certification of the proposed Settlement Class.

#### 1. Numerosity

Where there are likely more than 40 class members, numerosity is presumptively satisfied. Newberg § 3:12. When analyzing numerosity, a court uses its common sense. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012). Only a "reasonable estimate" is required to establish numerosity. *Bentley v. Honeywell Intern., Inc.*, 223 F.R.D. 471, 480 (S.D. Ohio 2004). Class notice issued to thousands of potential class members. Defendant has greater than 100 claims at issue. Numerosity is easily satisfied.

#### 2. Commonality

Commonality only requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[T]he commonality requirement is not usually a contentious one … and is easily met in most cases." NEWBERG §13:18. To demonstrate commonality, plaintiffs' "claims must depend upon a common contention…that is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "[E]ven a single common question will do." *Id.* at 359.

---

*Brown v. Homesite Group Inc. d/b/a Homesite Home Ins*., No. 4:14-cv-04026-SOH, DE 58 (W.D. Ark. April 7, 2017) (same); *Goodner v. Shelter Mut. Ins. Co.*, Case No. 4:14-cv-04013-SOH, DE 73 (W.D. Ark. June 6, 2017) (same); *Green v. American Modern Home Ins. Co., et. al*, Case No. 4:14-cv-04074-SOH, DE 94 (W.D. Ark. June 1, 2017) (same); *Adams v. Cameron Mut. Ins. Co*., No. 2:12-cv-02173-PKH, DE 52 (W.D. Ark. Aug. 27, 2015) (same). To Plaintiffs' counsel's knowledge, no labor depreciation *settlement* class has ever failed to be certified.

The Sixth Circuit has confirmed that commonality is satisfied in labor depreciation cases. *Hicks*, 965 F.3d at 459 ("Plaintiffs' claims share a common legal question central to the validity of each of the putative class member's claims: whether State Farm breached Plaintiffs' standard-form contracts by deducting labor depreciation from their ACV payments."); *Mitchell v. State Farm Fire & Cas. Co.*, 327 F.R.D. 552, 561 (N.D. Miss. 2018) ("The proposed class members, all of whom purchased insurance coverage from State Farm, each have a claim concerning the issue of whether State Farm breached its policy by depreciating labor costs in calculating actual cash value payments.... [C]ommonality is met."), *aff'd by* 954 F.3d 700 (5th Cir. 2020). Indeed, "[t]his common question, posed in the context of [Defendant's] uniform claim handling practices, 'will yield a common answer for the entire class that goes to the heart of whether [Defendant] will be found liable under the relevant laws.'" *Hicks*, 2019 U.S. Dist. LEXIS 27584, at *9, *aff'd by Hicks*, 965 F.3d 452.

In addition to labor withholdings, class members' entitlement to statutory prejudgment interest also presents a common issue. Commonality is easily satisfied.

### 3. Typicality

"Like the test for commonality, the test for typicality is not demanding." *Kerns v. Caterpillar, Inc.*, 2007 U.S. Dist. LEXIS 50723, at *12 (M.D. Tenn. July 12, 2007); NEWBERG § 3:29. A representative's claim is typical if it arises from the same conduct that gives rise to the claims of other class members and if his or her claims are based on the same legal theory. *Beattie v. Century Tel., Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). "[F]or the district court to conclude that the typicality requirement is satisfied, "a representative's claims need not always involve the same facts or law, provided there is a common element of fact or law." *Id*.

Again, the Sixth Circuit has already affirmed the determination that all claims in a parallel labor depreciation case are premised upon the same legal theories. *Hicks*, 2019 U.S. Dist. LEXIS 27584, at \*9, *aff'd by Hicks*, 965 F.3d 452; *Mitchell*, 327 F.R.D. at 561-62. The additional claims for prejudgment interest are likewise identical for both the putative class and representatives. Through these claims, Plaintiff seeks monetary relief for herself and all putative class members. Accordingly, "as goes the claim[s] of the named plaintiff[s], so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

### 4. *Adequacy*

Adequacy under Rule 23(a)(4) is satisfied where a proposed class representative: (1) does not have conflicts with other members of the class, and (2) has retained qualified counsel. *Young*, 693 F.3d at 543. Here, Plaintiff's interests are perfectly aligned with the proposed class, as she seeks to maximize everyone's recovery of compensatory damages and prejudgment interest. She retained counsel experienced in class actions and insurance law.

### B. The Settlement Meets The Requirements Of Rule 23(b)(3)

To qualify for certification under Rule 23(b)(3), a settlement class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem*, 521 U.S. at 615. Again, however, in a settlement class situation, the Court does not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 620.

### 1. *Predominance*

The determinative legal issue, whether labor may be depreciated under Defendant's homeowners policies, remains the predominating issue for purposes of this Court's certification analysis. *Hicks*, 965 F.3d 458-59 (affirming certification of labor depreciation class action after earlier Sixth Circuit panel resolved predominating common liability question in plaintiffs' favor); *Stuart*, 910 F.3d at 375 (certifying labor depreciation litigation class after Arkansas Supreme Court resolved the same legal dispute on question certification).

Like the other Circuit Courts that have affirmed certification of labor depreciation classes, in *Hicks* the Sixth Circuit affirmed the trial court's determination that predominance was satisfied. *Hicks*, 965 F.3d 458-59; *Mitchell*, 954 F.3d at 711-12 (finding district court did not abuse its discretion in finding predominance where overarching issue was whether insurer breached its contracts by depreciating labor costs); *Stuart,* 910 F.3d at 375-78 (finding "[i]t was not an abuse of discretion for the district court to conclude that plaintiffs' [labor depreciation] claims share a common, predominating question of law" that is "well suited to classwide resolution"); *Hicks* 2019 U.S. Dist. LEXIS 27584, at *14 (E.D. Ky. Feb. 21, 2019) ("[c]ourts in jurisdictions where labor depreciation has been found to be unlawful have uniformly found that common issues predominate in cases challenging insurers' depreciation of labor costs.").

## 2. *Superiority*

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. The superiority of class certification over other available methods is measured by consideration of certain factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in

managing a class action. *Hosp. Auth. Of Metro. Gov. of Nashville and Davidson Cty. v. Momenta Pharm., Inc.*, 333 F.R.D. 390, 414 (M.D. Tenn. 2019).

The "'most compelling rationale for finding superiority in a class action' is the existence of a 'negative value suit.' A negative value suit is one in which the costs of enforcement in an individual action would exceed the expected individual recovery." *Pfaff v. Whole Foods Mkt. Gr. Inc.*, No. 09-02954, 2010 U.S. Dist. LEXIS 104784, at *18 (N.D. Ohio Sep. 29, 2010) (citation omitted); *see Young*, 693 F.3d at 545; *Beattie*, 51 F.3d at 566-67 ("litigation should be brought as a class action if individual suits would yield small recoveries").

In *Hicks*, the Sixth Circuit affirmed the trial court's determination that superiority is satisfied:

> The district court appropriately concluded that superiority is satisfied here because a threshold common issue predominates (i.e. whether State Farm improperly depreciated labor costs from ACV payments) and because Plaintiffs' ability to obtain relief through individual damages suits is likely not economically feasible. As the court correctly observed, the payments State Farm made to Kentucky homeowners for depreciation costs through its 2015 refund program were generally less than $1,000.00 and a "significant portion" of the refunds were for amounts "less than the filing fee for initiating an action in state court."

*Hicks*, 965 F.3d 464. Given the relatively low per claim value here, the same analysis applies.

Accordingly, all of the requirements of Rule 23 are satisfied. The next step is for the Court to analyze whether the proposed settlement warrants final approval.

## V.    THE SETTLEMENT MERITS FINAL APPROVAL

The Settlement Agreement is fair, reasonable, and adequate, resulting from extensive, arm's length negotiations by experienced counsel.

### A.  The Court Should Grant Final Approval Because The Proposed Settlement Satisfies The Requirements Of Rule 23 And Sixth Circuit Precedent

Rule 23(e) was recently amended to codify the factors that affect whether a court should approve a class action settlement, including for a class that has not yet been certified. As discussed below, courts in the Sixth Circuit have applied similar principles as part of their analysis of final approval motions for many years. All such factors weigh in favor of final approval here.

Under Rule 23(e)(2), a court may only approve a settlement based on a finding that the proposed settlement is "fair, reasonable and adequate" after considering whether:

(A)    the class representatives and class counsel have adequately represented the class;
(B)    the proposal was negotiated at arm's length;
(C)    the relief provided for the class is adequate, taking into account:
    (i)    the costs, risks, and delay of trial and appeal;
    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e). These factors overlap with the factors that courts in the Sixth Circuit have considered on final approval, which include:

(1)    the likelihood of success on the merits weighed against the amount and form of relief in the settlement;
(2)    the complexity, expense and likely duration of the litigation;
(3)    the opinions of class counsel and class representatives;
(4)    the amount of discovery engaged in by the parties;
(5)    the reaction of absent class members;
(6)    the risk of fraud or collusion; and
(7)    the public interest.

*In re Packaged Ice Antitrust Litig.*, 2011 U.S. Dist. LEXIS 17255, at *46-47 (E.D. Mich. Feb. 22, 2011). "The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Id*. at 44. Consideration of the Rule 23(e) factors and the Sixth Circuit factors support final approval here.

**B. The Settlement Achieves An Excellent Result For The Proposed Settlement Class, Particularly Given The Expense, Duration and Uncertainty Of Continued Litigation**

*1. Likelihood Of Success On The Merits*

This factor analyzes whether there were risks that the class would not be certified or if certified, potentially decertified. It also analyzes whether the class, if certified, would be able to establish liability or damages, and whether the Defendant has vigorously defended the lawsuit and whether there were risks. *Blasi v. United Debt Servs., LLC*, 2019 U.S. Dist. LEXIS 198201, at *18-21 (S.D. Ohio Nov. 15, 2019). The Court then weighs these risks against the amount and form of relief in the settlement. *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *46-47.

Labor depreciation class actions pending throughout the United States have resulted in decidedly mixed results concerning liability, with the majority of class actions resulting in no recovery. *Hicks*, 751 Fed. Appx. at 710 (the "substantial weight of authority" is against successfully establishing liability in labor depreciation class action).

Before considering the likelihood of establishing class-wide liability or damages, the first consideration is whether this Court would have granted class certification of a litigation class. The Sixth Circuit has affirmed a grant of class certification in a labor depreciation case. *See generally Hicks*, 965 F.3d 452. However, while labor depreciation litigation classes have been initially certified for contractual claims (as referenced above in Section IV), no labor depreciation class action has ever gone to trial or faced the issue of decertification. Peterson Declaration at ¶ 29.

Assuming *arguendo* that class certification could have been obtained here and then sustained over any Rule 23(f) decertification motions, the next hurdle would be to establish class-wide liability and class-wide damages. *Id.* at ¶ 30. Based on the Sixth Circuit's decisions in *Perry* and *Cranfield*, as well as this Court's denial of Defendant's motion to dismiss, Plaintiff's counsel

had a high level of confidence in establishing contractual liability for the claims that were timely under the suit limitations clauses at issue. *Id.* Defendant, however, has not conceded this point. *Id.* The recovery of 100% of the value of these claims plus prejudgment interest reflects the strong value of these claims.

The proposed settlement of the Class claims is extremely favorable because: (1) class members filing claim forms will net 100% of their estimated non-material withholdings plus 5% simple interest; (2) "interest only" class members will also receive a $25 payment; and (3) the release is tailored to the subject matter of this lawsuit. In addition, Defendant has agreed to pay a service award, attorneys' fees, case expenses, and settlement administration costs on top of class members' recoveries, to the extent approved by this Court.

### 2. Complexity, Expense And Likely Duration Of The Litigation

"Most class actions are inherently complex." *Moore v. Aeroteck, Inc.*, 2017 U.S. Dist. LEXIS 102621, at *10 (S.D. Ohio June 30, 2017). Labor depreciation class actions, in particular, are notoriously complex and slow moving due to the increased likelihood of interlocutory appeals via state supreme court "question certification" laws, 28 U.S.C. 1292(b) and/or Federal Rule of Civil Procedure 23(f). For example, the labor depreciation lawsuit *Stuart, supra*, Argument Section IV, was filed on January 2, 2014 and remained pending in the Western District of Arkansas over six-years (and after an Eighth Circuit appellate decision). *Stuart*, Case No. 4:14-4001 (W.D. Ark.). Similarly, *Hicks* was filed on February 28, 2014, and remained pending for over eight years.

The instant lawsuit thus could have continued for several additional years in trial and appellate courts absent settlement. Experts in the areas of claims handling and data manipulation would have been retained. Both sides retained sophisticated counsel with nationwide class action

practices. Given the foregoing, the complexity, expense and likely duration of the litigation supports final approval of the proposed settlement here.

### 3. The Opinions Of Class Counsel And Class Representative

Plaintiff's Counsel, who is putative or certified class counsel in dozens of pending labor depreciation class actions nationwide, including all labor depreciation cases currently pending in Ohio, and has vast experience in insurance, class actions and complex litigation, strongly recommends the settlement. Peterson Declaration at ¶ 6. Courts give weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of a settlement. *Blasi*, 2019 U.S. Dist. LEXIS 198201, at *20-21; *Does 1-2 v. Déjà Vu Services, Inc.*, 925 F.3d 886, 899 (6th Cir. 2019).

Plaintiff, knowing that the proposed Settlement will result in recovery of 100% of the still-withheld labor depreciation plus interest, is similarly pleased with the proposed Settlement.

### 4. The Amount Of Discovery

At the time of settlement, plaintiffs had obtained extensive and detailed state-wide claims data discovery from Defendant and estimate data discovery from Defendant's third-party vendor. Peterson Declaration at ¶ 15.

### 5. The Reaction Of Class Members

**No** Class Members objected to any aspect of the Settlement, including the class relief, the requested service awards for Plaintiff, or Class Counsel's request for an amount no greater than $1,740,000 for attorneys' fees and costs and litigation expenses. This fact supports final settlement approval. *In re Southeastern Milk Antitrust Litig.*, 2012 U.S. Dist. LEXIS 83703, at *15 (E.D. Tenn. June 15, 2012) ("The lack of objections by class members in relation to the size of the class

also highlights the fairness of the settlements to unnamed class members and supports approval of the settlements."). Only three putative Class Members have sought exclusion from the Class.

### 6. The Risk Of Fraud Or Collusion

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008); *Garner Props. & Mgmt., LLC v. City of Inkster*, 2020 U.S. Dist. LEXIS 146655, at *24 (E.D. Mich. Aug. 14, 2020). There is no indicia of fraud or collusion as the class settlement negotiations were structured to follow the highest ethical standards between counsel with extensive nationwide class action experience. *See* Peterson Declaration at ¶¶ 17-21.

### 7. The Public Interest

"There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Dick v. Sprint Comm. Co., LLC*, 297 F.R.D. 283, 297 (W.D. Ky. 2014). "In the instant case, the proposed settlement[s] end[s] potentially long and protracted litigation among these parties and frees the Court's valuable judicial resources." *In re Southeastern Milk*, 2012 U.S. Dist. LEXIS 83703, at *19. This weighs in favor of approving the proposed settlement because the public interest is served by resolution of this case. *Id.*

### C. Plaintiff's Forthcoming Motion Requesting Attorneys' Fees, Costs, And Service Award Fall Within The Range Of Reasonableness Sufficient To Allow Final Approval

The Settlement Agreement provides that Class Counsel will seek as attorneys' fees, costs and litigation expenses, and Defendant has agreed to pay if Court approved, an amount no greater than $1,740,000.00. As detailed in the Peterson Declaration, Class Counsel estimate that the benefits to be made available to the class and the amount that Plaintiffs will request the Court to

direct Defendant to pay separately for attorneys' fees, litigation expenses, and administration costs, together at least total $8.88MM in the aggregate. Accordingly, Class Counsel's fee request amounts to approximately 19.5% of the aggregate value of the Settlement. Peterson Declaration at ¶ 28. Given Class Counsel's considerable efforts and success in achieving this recovery for class members, there is no reason to doubt the reasonableness of Class Counsel's request for attorneys' fees and expenses or the fairness of the Settlement.

Class Counsel seek amounts made available on a claims made basis pursuant to the percentage-of-the-fund method described in *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 516 (6th Cir. 1993). In the Sixth Circuit, using the percentage-of-the-fund methodology is the "trend" for awarding fees in common benefit class actions, *N.Y. Teacher's Retirement Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 243 (E.D. Mich. 2016), with the percentages awarded typically ranging from 20 to 50 percent of the common fund created." *Moore*, 2017 U.S. Dist. LEXIS 102621, at *19-20. Here, Class Counsels' request of approximately 19.5% of the common fund created is at the low end of the typical range. *Id.*; *Johnson v. Midwest Logistics Sys.*, 2013 U.S. Dist. LEXIS 74201, at *18 (S.D. Ohio May 25, 2013) (one-third fee award is "consistent with the general fee awards in class action cases").

Further, because the attorneys' fees will not reduce any class member's recovery and the attorneys' fees are to be paid "*over and above* the settlement costs and benefits with no reduction of class benefits," agreements between the parties as to the amount to fees "are *encouraged*, particularly where the attorneys' fees are negotiated separately and only after all the terms have been agreed to between the parties." *Manners v. Am. Gen. Life Ins. Co.*, 1999 U.S. Dist. LEXIS 22880, at *84 (M.D. Tenn. Aug. 10, 1999). Federal courts, including those in the Sixth Circuit,

hold that these "over and above" fee requests are entitled to a "presumption of reasonableness." *Bailey v. AK Steel Corp.*, 2008 U.S. Dist. LEXIS 18838, at *3 (S.D. Ohio Feb. 28, 2008).

Finally, in the Sixth Circuit, service awards are typically provided to class representatives for their often-extensive involvement with a lawsuit and are "efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hogan v. Cleveland Ave Rest. Inc.*, 2019 U.S. Dist. LEXIS 212214, at *19 (S.D. Ohio Dec. 10, 2019) (approving service awards up to $15,000); *Owner-Operator Indep. Drivers Ass'n v. Arctic Express, Inc.*, 2016 U.S. Dist. LEXIS 128819, at *19 (S.D. Ohio Sep. 21, 2016) (approving service awards up to $25,000).

## VI.    CONCLUSION

Given the presence of skilled counsel for both parties, the complexity of facts and law at issue, the further substantial expense if this action were to continue, the risks attendant to continued litigation, the present benefit of the Settlement, and the arm's-length negotiations leading to settlement, the Court should find that the Settlement is fair, reasonable, and adequate and enter judgment accordingly.

Respectfully submitted,

 /s/  Stephen G. Whetstone
STEPHEN G. WHETSTONE (0088666)
Email: steve@whetstonelegal.com
Whetstone Legal, LLC
P.O. Box 6
2 N. Main Street, Unit 2
Thornville, Ohio 43076
Telephone: 740.785.7730
Facsimile: 740-205-8898

and

Erik D. Peterson (*pro hac vice*)
ERIK PETERSON LAW OFFICES, PSC
150 East Short Street, Suite 150
Lexington, KY 40507
T: 800-614-1957
erik@eplo.law

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed and served via the Court's ECF filing system which will send electronic notices of same to all counsel of record on this the 27th day of June, 2022.

 /s/  Stephen G. Whetstone