UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
at DAYTON
*Electronically Filed*

| | |
|---|---|
| MARY DONOFRIO ) <br> individually and on behalf of all ) <br> other Ohio residents similarly situated, ) <br>   ) <br> Plaintiff, ) <br>   ) <br>   ) <br> v. ) <br>   ) <br> AUTO-OWNERS (MUTUAL) ) <br> INSURANCE COMPANY ) <br>   ) <br> Defendant. ) | Judge Walter H. Rice <br><br> Case No.: 3:19-cv-58 |

___

**DECLARATION OF ERIK D. PETERSON IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL AND PLAINTIFF'S MOTION FOR SERVICE AWARD TO THE CLASS REPRESENTATIVE AND AWARDS OF ATTORNEYS' FEES, COSTS AND EXPENSES TO CLASS COUNSEL**
___

Pursuant to 28 U.S.C. § 1746, I, Erik D. Peterson, state that I am an attorney duly licensed to practice in the Commonwealth of Kentucky and the State of California, as well as multiple federal circuit courts of appeals and district courts. I have appeared as counsel for the Plaintiff in the above-captioned matter. I further declare as follows:

1. This Declaration is submitted in support of Plaintiff's motions for final approval, service award to the Class Representative and awards of attorneys' fees, costs, and expenses to Class Counsel.

2. I am the founder and owner of Erik Peterson Law Offices, PSC, located in Lexington, Kentucky. Following my graduation from the University of Kentucky College of Law,

I served as a law clerk to Hon. Gregory F. Van Tatenhove in the United States District Court for the Eastern District of Kentucky. Since completing my clerkship over fourteen years ago, my practice has focused solely on class action and insurance litigation in trial and appellate courts around the country.

3. As it relates specifically to labor depreciation class actions, I have been lead or co-lead counsel in more than forty putative and certified class actions, both pending and resolved, in state or federal courts in Alabama, Connecticut, Nebraska, Kentucky, Illinois, Louisiana, Ohio, Massachusetts, Michigan, Mississippi, Missouri, North Carolina, South Carolina, Tennessee, Texas, and Washington. These cases have been against a wide variety of property insurers, from small regional insurers to national insurers. I have also consulted with groups of plaintiffs' counsel in other labor depreciation class actions in which I do not represent the litigants.

4. I have argued labor depreciation class action appeals before the Nebraska Supreme Court and the Sixth Circuit Court of Appeals and have served as counsel in numerous cases setting important precedent related to labor depreciation and class certification of labor depreciation actions. *See*, *e.g.*, *Hicks v. State Farm Fire and Cas. Co.*, 965 F.3d 452 (6th Cir. July 10, 2020) (affirming class certification); *Hicks v. State Farm Fire & Cas. Co.*, 751 Fed. Appx. 703 (6th Cir. 2018) (holding labor depreciation improper under Kentucky law); *Arnold v. State Farm Fire & Cas. Co.*, 268 F. Supp. 3d 1297 (S.D. Ala. 2017) (holding labor depreciation improper under Alabama law); *Cedarview Mart, LLC v. State Auto Prop. & Cas. Co.*, 2021 U.S. Dist. LEXIS 60871, at *5 (N.D. Miss. Mar. 30, 2021) (holding labor depreciation improper under Mississippi law). I am counsel of record in all labor depreciation cases currently pending in the Fifth, Sixth, Ninth, and Eleventh Circuits. And, I am counsel of record in the vast majority of labor depreciation cases that have been filed nationwide.

5. For these reasons, I consider myself a national subject matter expert for plaintiffs' labor depreciation class actions. Only a handful of law firms pursue these cases on a national scale.

6. This Declaration sets forth a brief summary of the background of this lawsuit, particularly the settlement negotiations that ultimately led to the proposed settlement and the basis upon which Class Counsel recommend that the Court approve the settlement. The following recitation is not all-inclusive but rather is intended to illustrate how settlement negotiations were structured, and the analysis that Class Counsel incorporated in agreeing to a settlement on behalf of the proposed settlement classes. I believe that these facts demonstrate that the settlement is fair, reasonable, and adequate, and should be approved by the Court.

## Brief History of the Litigation

7. This action and proposed settlement involve allegations that Auto-Owners (Mutual) Insurance Company ("Defendant" or "Auto-Owners") breached the terms of its standard-form property insurance policies with Plaintiff and other class members by wrongfully depreciating labor costs when adjusting property loss claims in violation of applicable law.

8. On February 25, 2019, Plaintiff Mary Donofrio commenced this Action. Dkt. 1. Plaintiff alleged Auto-Owners improperly depreciated the estimated cost of labor necessary to complete repairs to insured property when it calculated and issued ACV claim payments to Plaintiff and other class members for structural damage losses suffered under her property insurance policy. *See generally* Dkt. 1. Plaintiff asserted a claim for breach of contract on behalf of herself and a class of Auto-Owners policyholders who received ACV payments from Auto-Owners for loss or damage to a dwelling, business, or other structures located in Ohio. *Id.*

9. At the time Plaintiff filed her Complaint, only two Ohio federal district courts had ruled on the labor depreciation question, and both had ruled adverse to policyholders. *Cranfield v.*

*State Farm Fire & Cas. Co.*, 340 F. Supp. 3d 670, 671 (N.D. Ohio 2018); *Perry v. Allstate Indem. Co.*, 2018 U.S. Dist. LEXIS 199616 (N.D. Ohio Nov. 26, 2018).

10. On June 10, 2019, Defendant filed a motion to dismiss Plaintiff's Complaint, asking this Court to follow the district court decisions in *Cranfield* and *Perry*. Dkt. 7. Plaintiff filed her opposition to Defendant's motion to dismiss on July 1, 2019. Dkt. 9. In addition to addressing the merits of Defendant's motion to dismiss, Plaintiff suggested that the Court defer ruling on the motion until after the Sixth Circuit issued its decisions in *Cranfield* and *Perry*. Dkt. 9, PageID.120.

11. On March 18, 2020, the Sixth Circuit reversed the district court's decision in *Perry*. 953 F.3d 417. Then, on March 23, 2020, the Sixth Circuit issued it decision in *Cranfield*, also reversing the district court. *Cranfield v. State Farm Fire & Cas. Co.*, 798 F. App'x 929, 929 (6th Cir. 2020).

12. Following the Sixth Circuit's decisions in *Perry* and *Cranfield*, on March 26, 2020, the Court denied Defendant's motion to dismiss, holding that Plaintiff's "'interpretation prevails against the insurer.'" Dkt. 17, PageID.247.

13. On May 8, 2020, Defendant filed its Answer and affirmative defenses to the Complaint (Dkt. 19), and shortly thereafter, the Court entered its Preliminary Pretrial Conference Order Limited to Class Certification Issues. Dkt. 20.

14. Following entry of the Preliminary Pretrial Conference Order Limited to Class Certification Issues, the parties commenced discovery and Plaintiff engaged in an extended period of informal and formal discovery processes to gain information needed to pursue a motion to certify the putative class. During the discovery process, Auto-Owners produced extensive electronic claims data regarding potential putative class members throughout Ohio.

**The Settlement Process**

15. Prior to reaching the proposed settlement, the parties engaged in discovery of Defendant's internal and third-party statewide claims and estimating data and documents.

16. Beginning in early summer 2020, the parties agreed that they should devote their resources toward attempting to resolve the case on a class-wide basis instead of continuing to engage in time consuming class certification discovery. Over the next several months, through numerous telephone conversations, the parties continued to attempt to negotiate a settlement in principle for relief to the class.

17. Only after the Sixth Circuit issued its opinion affirming class certification in the parallel labor depreciation case prosecuted by Plaintiff's counsel here, *Hicks v. State Farm Fire and Cas. Co.*, 965 F.3d 452 (6th Cir. July 10, 2020), *reh'g en banc denied* (6th Cir. Aug. 26, 2020), did Defendant agree to class relief. The settlement in principle did not include any agreements on attorneys' fees, litigation costs or service awards.

18. Consistent with ethical standards for class action settlements, only after relief to the proposed class was agreed to, did the Plaintiff's counsel begin to negotiate the service awards, attorneys' fees, and costs to which Defendant would not object and costs that may be awarded subject to the Court approval process set forth in Federal Rule of Civil Procedure 23(e). Because these fees will be paid separately by the Defendant and will not reduce the recovery to the class or be subsidized by the same, Defendant was incentivized to negotiate and pay for as little fees and litigation expenses as possible.

19. During September 2020, the parties began to negotiate a service award, attorneys' fees and litigation costs, after obtaining further statewide data reports and making damages modelling of the aggregate values to be made available to the putative class, as well as considering likely common fund percentages.

20. After dozens of telephone conversations and emails between counsel, as well as the exchange of significant additional state-wide claims data, the parties reached a resolution on a service award, attorneys' fees, and litigation expenses.

21. Because of the timing of negotiations for fees and costs in comparison to the class relief, there are no "red flags" concerning the manner in which the class action settlement negotiations were conducted. *See* NEWBERG ON CLASS ACTIONS § 13:54 (5th ed. Dec. 2021 Update) ("The concern is also greater when the value of the settlement fund and the fees were negotiated simultaneously, as that could indicate that some of the class's fund was traded off for greater fees.").

## The Settlement Terms

22. The proposed settlement here provides that Class Members who submit a claim form and still have outstanding labor withheld from their prior ACV claim payments will receive 100% of the still outstanding labor depreciation, plus simple interest at the rate of 5% per annum on the net estimated Nonmaterial Depreciation determined under this section, from the date of the last ACV Payment to the date of Preliminary Approval. In other words, these Class Members will recover more than 100% of the labor depreciation this lawsuit sought to recover.

23. Additionally, Class Members for whom all labor depreciation that was withheld from ACV Payments was subsequently paid by Auto-Owners through the normal insurance claim process ("interest only" Class Members) and who submit a claim form, will receive a $25 payment.[1]

---

[1] Auto-Owners insurance policies are either "actual cash value only" policies or "replacement cost value" policies. For the latter type of policies, insurance policyholders who suffer a covered loss first receive an actual cash value payment (calculated by subtracting depreciation from the replacement cost value of the covered loss) and then can recover the depreciation (known as "depreciation holdback" or "replacement cost benefits") once the work is performed. The Class

6

24. In addition to the class relief, Auto-Owners has agreed to pay administration costs, a service award to the named Plaintiff, and attorney's fees and expenses. Unlike in many settlements, the payment of fees, expenses, and a service award will not reduce the value of the putative class members' recoveries. Thus, these amounts are an additional benefit to the class.

25. The amount of payments to be made available to Class Members will vary. Based on modeling using statewide claims data spreadsheets produced by Auto-Owners, the average potential claim recovery for claims with "still withheld" amounts of Non-Material Depreciation is believed to be approximately $1,907.00. In contrast, an "interest only" Class Member would receive only $25.00. Based upon analysis of proprietary depreciation data from Xactanalysis® reports for Auto-Owners' Ohio property claims included in the Settlement, Plaintiff's counsel estimates that the aggregate amount to be made available to class members for payment on a claims made basis is at least $7,095,111, exclusive of "interest only" payments to Class Members, attorney's fees, litigation expenses, administration costs, and the class representative service award.

26. Plaintiff's counsel strongly believe this is an excellent result for the putative class, particularly given the many risk factors discussed below.

### Service Award and Class Counsel Fees and Expenses

27. After the proposed settlement terms for the putative class were agreed, the parties then negotiated proposed attorney's fees/costs and a class representative service award.

28. Pursuant to the parties' agreement, Defendant has agreed to pay, subject to Court approval, an amount no greater than $1,740,000 in attorney's fees and litigation expenses and an

---

Members in the secondary, "interest only" category include those who have recovered the withheld depreciation through making a secondary claim for this replacement cost benefit.

amount no greater than $7,500 for Plaintiff's class representative service award. Plaintiff's counsel estimate the aggregate value of the relief made available to the class to be at least $7,095,111 (exclusive of interest-only payments), plus costs of administration (estimated to be $50,000), attorneys' fees and expenses ($1,740,000), for a total aggregate value of at least $8,885,111. Thus, the attorney's fees to be sought are approximately 19.5% of the aggregate value. *See, e.g, Johnson v. Midwest Logistics Sys.*, 2013 U.S. Dist. LEXIS 74201, at *18 (S.D. Ohio May 25, 2013) (one-third fee award is "consistent with the general fee awards in class action cases"); *Blasi v. United Debt Servs., LLC*, 2019 U.S. Dist. LEXIS 198201, at *23 (S.D. Ohio Nov. 15, 2019) (quoting *Rotuna v. W. Customer Mgmt. Grp., LLC*, 2010 U.S. Dist. LEXIS 58912 (N.D. Ohio June 15, 2010)) ("'Courts readily approve the percentage-of-the-fund method when a plaintiff obtains an exceptional result and avoids extended litigation time and costs.'").

**<u>Factors Supporting Approval of the Settlement</u>**

29. Both at the time suit was filed and when the settlement was being negotiated, the risk of the Class recovering nothing was substantial. *Hicks v. State Farm Fire & Cas. Co.*, 751 Fed. Appx. 703, 710 (6th Cir. 2018) (the "substantial weight of authority" is in favor of insurers in labor depreciation class actions). While labor depreciation litigation classes have been initially certified for contractual claims, no labor depreciation class action has ever gone to trial or faced the issue of decertification.

30. Assuming *arguendo* that class certification could have been obtained and sustained over any Rule 23(f) appeals or decertification motions, Plaintiff's next hurdle would be to establish class-wide liability and class-wide damages. After the Sixth Circuit's decision in *Perry v. Allstate Indemn. Co*., 953 F.3d 417 (6th Cir. 2020), Plaintiff's counsel had a high level of confidence in

8

establishing contractual liability for the claims that were timely under the suit limitations clauses at issue. Defendant, however, have not conceded this point.

31. Defendant retained a experienced class action defense attorneys in Todd Noteboom, Peter Schwingler and their team at Stinson LLP, who have defended labor depreciation class action claims in many jurisdictions around the country. Absent settlement, defense counsel would have continued to put forward several grounds for avoiding both liability and class certification.

32. At the time of settlement (and of execution of this declaration), other carriers are actively litigating their Ohio labor depreciation cases.

33. This settlement was not reached until Plaintiff's counsel had conducted extensive pre- and post-suit analysis and investigation, consulted with experts about the novel and difficult issues raised, thoroughly researched the law and facts, and assessed the risks of prevailing at both the trial court and appellate levels.

34. There were several factors in the risk assessment process that had to be considered. These complexities and factors included the following considerations:

    a. Plaintiff's counsels' risk assessment had to consider the risk of losing at the class certification, liability or damages stages. For example, the Court may not have certified a class, or certified as broad of a class, as sought by the Plaintiff's counsel.

    b. Plaintiff's counsel's risk assessment also had to take into account considerations associated with increasing common fund attorneys' fees and costs. Even if the Class prevailed upon certification as well as the liability and damages stages at one or more trials, Plaintiff's counsel would likely have to incur substantial non-recoverable costs

9

for, *e.g.*, e-discovery, non- testifying expert witnesses, jury consultant fees, etc. These costs would be set off against any recovery.

  c. Additionally, Plaintiff's counsel's risk assessment had to take into account the time value of money, as well as the continued likelihood that as time goes by, more putative class members will be difficult to locate in the claims administration process or pass away.

35. Based upon these factors and considerations, Plaintiff's counsel deem the amount of class recovery under the Settlement to warrant preliminary approval.

### Reasonableness of Class Counsels' Request for Attorneys' Fees and Costs

36. As noted above, Class Counsel seek, and Defendants agreed to pay subject to Court approval, an amount no greater than $1,740,000 in attorneys' fees and litigation expenses. Accordingly, Class Counsel seek this amount in attorneys' fees, litigation costs, and expenses.

37. The parties spent substantial time analyzing and confirming the aggregate value of the proposed settlement. In making their aggregate estimates, the parties had access to estimating software data, as well as claims payment data from Auto-Owner's claims system, for each potential claim within the class. Based on this analysis, Class Counsel estimate the aggregate value of the relief made available to the class at to be at least $7,095,111 (exclusive of interest-only payments), costs of administration (estimated by the Administrator to be $50,000), service award ($7,500), and attorneys' fees and expenses ($1,740,000). None of these additional amounts will reduce the amounts made available to class members.

38. All the foregoing amounts, both to be made available to the class and to be paid separately by Defendants, total $8,885,111 in the aggregate. Plaintiff's requested attorneys' fees and litigation expenses reflect 19.5% of the aggregate total.

10

39. This percentage falls well within the range of reasonableness for class action settlements in the Sixth Circuit. Further, this percentage is consistent with other claims made labor depreciation class action settlements that have received final approval by federal and state courts.

40. Attached to this declaration at Exhibit A is a table comprised of seventeen recent (June 1, 2017 through May 26, 2022) labor depreciation class action settlements wherein the attorneys' fees and costs awards sought for each settlement were based upon a percentage of the value of total benefits made available to the policyholder-classes on a claims made basis. This chart is inclusive of all such state or federal class action settlements involving labor depreciation that have reached final approval of which Class Counsel is aware. The range of percentages for the fees and costs awards is between 17.08% to 27.7% for all such class action settlements.

41. Notably, several of the labor depreciation class action settlements set forth in Exhibit A, including the negotiated fees and litigation costs to be paid to class counsel, were the result of arm's-length negotiations conducted during settlement conferences overseen by federal magistrate judges or mediation sessions overseen by retired federal and state court judges. Most recently, on April 28, 2022, the Eastern District of Kentucky granted final approval to the homeowners' labor depreciation class action settlement in *Hicks v. State Farm Fire & Cas. Co.*, No. 14-cv-00053 (E.D. Ky. Apr. 28, 2022) (*Hicks* Dkt. 238), which was achieved through two settlement conferences conducted by U.S. Magistrate Judge Matthew Stinnett in the fall of 2020. I am lead plaintiffs' counsel in Hicks. During the first *Hicks* settlement conference on October 23, 2020, and with the assistance of Magistrate Stinnett, the parties reached a settlement in principle for the relief to the class. During the second settlement conference on November 6, 2020 with Magistrate Judge Stinnett, the parties reached an agreement on the amount of service awards,

attorneys' fees and litigation costs that plaintiffs would seek by motion and to which the defendant would not object.

42. In support of both final approval of the parties' settlement here and Class Counsel's request for attorneys' fees, costs, and litigation expenses, it is worth noting that the proposed settlement here is more favorable to the policyholder class than those brokered by the federal magistrate judge in *Hicks* because this settlement includes all policyholders under any structural insurance policy issued by Auto-Owners, whereas the settlement achieved in *Hicks* only involved policyholders insured under homeowners policies.

43. During the fee, costs, and service award negotiations in this case, Defendant was highly incentivized to aggressively negotiate to pay as little as possible because fees, costs, and service awards were to be paid on an "over and above" basis, i.e., they would not reduce the funds available to the class and would be funded by new, additional monies from Defendant.

44. My co-counsel and I are qualified to handle this litigation. We have vigorously represented the interests of the class on a contingent fee basis. Our representation of the subject classes necessarily limited our ability to undertake other complex litigation, and we have devoted significant resources to these cases.

45. Both firms (my own and Whetstone Legal, LLC) have taken an active role in pursuing this litigation and achieving this settlement. The firms have reached an agreement on division of any fees and expenses awarded by the Court.

46. Class Counsel pursued this case on a contingency fee basis, with zero assurance of any recovery. From the beginning, the Defendant's counsel defended the case with vigor.

47. The case involved substantial risk, both in terms of the legal issues presented but also in the form of time and expense investment by Class Counsel. For a small firm like mine, a

12

bad result on a case such as this can be devastating. Moreover, the significant time required to obtain the result here for the class prevented me from taking on other cases that traditionally generate significant fees for my firm. Nonetheless, my firm and my co-counsel invested the time and money necessary to vigorously prosecute the case.

48. The value of the benefit rendered to the classes, the fact that the services were undertaken on a contingent basis, the complexity and risks of the litigation, counsels' willingness to pursue the small, negative value claims at issue on a class basis, and the professional skill and standing of the lawyers representing the class and Defendant all support approval of the requested award of attorneys' fees and expenses.

49. Going forward, Class Counsel will continue to incur costs and the expenditure of attorney time. For instance, Class Counsel will spend time associated with responding to inquiries from members of the Class. Additionally, Class Counsel will ensure that the claims settlement administration process is completed.

### Service Awards for Plaintiff

50. Defendant agreed to pay a service award to Plaintiff in the amount of $7,500. This amount represents a fair payment for Plaintiff's service as a class representative.

51. Plaintiff regularly communicated with Class Counsel, provided documents to assist Class Counsel in pursuing discovery, reviewed documents, assisted and participated in settlement negotiations, and generally acted in a fashion that was consistent with a class representative of the highest ethical standards. Plaintiff was aware of her duties as class representative and took them seriously. Plaintiff answered questions when posed by her counsel and Plaintiff made herself available as needed.

52. Plaintiff obtained a Settlement that makes available to the Class an estimated value of at least $7,095,111, exclusive of "interest only" payments to Class Members, attorney's fees, litigation expenses, administration costs, and the class representative service award. Her willingness to serve as a class representative was critical to the litigation.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

<u>s/ Erik D. Peterson</u><br>
Erik D. Peterson<br>
erik@eplo.law<br>
June 27, 2022