UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
at DAYTON
*Electronically Filed*

| | | |
|---|---|---|
| MARY DONOFRIO | ) | |
| individually and on behalf of all | ) | |
| other Ohio residents similarly situated, | ) | Judge Walter H. Rice |
| | ) | |
| Plaintiff, | ) | Case No.: 3:19-cv-58 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AUTO-OWNERS (MUTUAL) | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

---

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SERVICE AWARD TO THE CLASS REPRESENTATIVE AND AWARDS OF ATTORNEYS' FEES, COSTS, AND EXPENSES TO CLASS COUNSEL**

---

## INTRODUCTION

Plaintiff Mary Donofrio ("Plaintiff") alleges that Defendant Auto-Owners (Mutual) Insurance Company ("Auto-Owners" or "Defendant") improperly withheld labor costs as depreciation in calculating policyholders' "actual cash value" ("ACV") payments and, as a result of such withholdings, Plaintiff and other Class Members were deprived of the full amount owed on their insurance claims, thereby breaching their insurance policies. On March 18, 2022, this Court preliminarily approved the parties' proposed settlement. Dkt. 30. Concurrent with this Motion, Plaintiff has filed an unopposed motion for final settlement approval and now moves for a service award to Plaintiff and awards of attorneys' fees, costs, and expenses to Class Counsel.

Class Counsel undertook significant litigation efforts and expense to prosecute this case against Defendant. The settlement provides outstanding results for Class Members, and was achieved because of the skill, determination, and effective advocacy of Class Counsel. Accordingly, Plaintiff respectfully submits this Motion seeking an award of attorneys' fees, costs, and litigation expenses in the amount of $1,740,000 (which represents 19.5% of the total of the benefits made available to the Class and the amounts to be paid separately by Defendant, subject to this Court's approval). Importantly, Defendant's payments to Class Members will not be reduced by the amounts paid for attorneys' fees and litigation costs. The requested award is fair, reasonable, commensurate with the results obtained by Class Counsel, and consistent with Sixth Circuit precedent.

Finally, Defendant has also agreed to pay a service award to the Class Representative in the amount of $7,500, subject to this Court's approval. The service award is appropriate here given the efforts made by Plaintiff to protect the interests of the Settlement Class, the time and effort she expended pursuing these matters, as well as the substantial benefit she bestowed on the Class.

Therefore, Class Counsel respectfully request that the Court approve the service award to Plaintiff, which if approved will not reduce the Settlement Class Members' recoveries.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. LITIGATION HISTORY

This action involves allegations that Defendant breached the terms of its standard-form property insurance policies that it entered into with Plaintiff and other class members by wrongfully depreciating labor costs when adjusting property loss claims in violation of Ohio law.

#### A. Ohio Law Concerning Labor Depreciation

This action involves allegations that Defendant breached the terms of its standard-form property insurance policies with Plaintiff and other class members by wrongfully depreciating labor costs when adjusting property loss claims in violation of Ohio law. *See Perry v. Allstate Indemn. Co.*, 953 F.3d 417 (6th Cir. 2020) ("[b]ecause Perry's interpretation of 'depreciation' is a fair reading of an ambiguous term, her interpretation prevails against the insurer. We accordingly hold as a matter of law that it was improper for Allstate to depreciate labor costs to arrive at its net payment to Perry for the damage to her home.").

#### B. The Lawsuit

On February 25, 2019, Plaintiff commenced this Action. Dkt. 1. Plaintiff alleged that Defendant improperly depreciated the estimated cost of labor necessary to complete repairs to insured property when it calculated and issued ACV claim payments to them and other class members for structural damage losses suffered under their property insurance policies. *See generally id.* Plaintiff asserted a claim for breach of contract on behalf of herself and a class of Defendant's policyholders who received ACV payments from Defendant for loss or damage to a dwelling, business, or other structures located in Ohio. *Id.*

At the time Plaintiff filed her Complaint, only two Ohio federal district courts had ruled on the labor depreciation question, and both had ruled adverse to policyholders. *Cranfield v. State Farm Fire & Cas. Co.*, 340 F. Supp. 3d 670, 671 (N.D. Ohio 2018); *Perry v. Allstate Indem. Co.*, 2018 U.S. Dist. LEXIS 199616 (N.D. Ohio Nov. 26, 2018). On June 10, 2019, Defendant filed a motion to dismiss Plaintiff's Complaint, asking this Court to follow the district court decisions in *Cranfield* and *Perry*. Dkt. 7. Plaintiff filed her opposition to Defendant's motion to dismiss on July 1, 2019. Dkt. 9. In addition to addressing the merits of Defendant's motion to dismiss, Plaintiff suggested that the Court defer ruling on the motion until after the Sixth Circuit issued its decisions in *Cranfield* and *Perry*. Dkt. 9, PageID.120.

On March 18, 2020, the Sixth Circuit reversed the district court's decision in *Perry*. 953 F.3d 417. Then, on March 23, 2020, the Sixth Circuit issued it decision in *Cranfield*, also reversing the district court. *Cranfield v. State Farm Fire & Cas. Co.*, 798 F. App'x 929, 929 (6th Cir. 2020).[1]

Following the Sixth Circuit's decisions in *Perry* and *Cranfield*, on March 26, 2020, the Court denied Defendant's motion to dismiss, holding that Plaintiff's "'interpretation prevails against the insurer.'" Dkt. 17, PageID.247. On May 8, 2020, Defendant filed its Answer and affirmative defenses to the Complaint (Dkt. 19), and shortly thereafter, the Court entered its Preliminary Pretrial Conference Order Limited to Class Certification Issues. Dkt. 20. The parties then commenced discovery and Plaintiff engaged in an extended period of informal and formal discovery processes to gain information needed to pursue a motion to certify the putative class. Peterson Declaration at ¶ 14.[2] During the discovery process, Defendant produced extensive

---

[1] Class Counsel here are counsel of record for plaintiffs in both *Perry* and *Cranfield*.

[2] The Peterson Declaration, filed concurrently with this Memorandum, addresses the history of settlement negotiations for this lawsuit and the timing and structure of the settlement negotiations. Peterson Declaration at ¶¶ 15-28. The Declaration also addresses the considerations that led to the

electronic claims data regarding potential putative class members throughout Ohio. *Id.* at ¶ 15. As discovery proceeded, the parties agreed to begin settlement discussions in earnest. *Id.* at ¶¶ 15-20

### C. Settlement Negotiations

Prior to reaching the proposed settlement, the parties engaged in discovery of Defendant's internal and third-party statewide claims and estimating data and documents.

Beginning in early summer 2020, the parties agreed that they should devote their resources toward attempting to resolve the case on a class-wide basis instead of continuing to engage in time consuming class certification discovery. *See* Peterson Declaration at ¶ 16.

Over the next several months, through numerous telephone conversations, the parties continued to attempt to negotiate a settlement in principle for relief to the class. Only after the Sixth Circuit issued its opinion affirming class certification in the parallel labor depreciation case prosecuted by Plaintiff's counsel here, *Hicks v. State Farm Fire and Cas. Co.*, 965 F.3d 452 (6th Cir. July 10, 2020), *reh'g en banc denied* (6th Cir. Aug. 26, 2020), did Defendant agree to class relief. *See* Peterson Declaration at ¶ 17. The settlement in principle did not include any agreements on attorneys' fees, litigation costs or service awards. *Id*.

Consistent with ethical standards for class action settlements, only after relief to the proposed class was agreed to, did the Plaintiff's counsel begin to negotiate the service awards, attorneys' fees, and costs to which Defendant would not object and costs that may be awarded. *See* Peterson Declaration at ¶ 18. During September 2020, the parties began to negotiate a service award, attorneys' fees and litigation costs, after obtaining further statewide data reports and making damages modelling of the aggregate values to be made available to the putative class, as

_____

compromise in exchange for the proposed release. *Id.* at ¶¶ 29-35; *see also generally* Whetstone Declaration (also filed concurrently herewith).

well as considering likely common fund percentages. *Id*. at ¶ 19. After dozens of telephone conversations and emails between counsel, as well as the exchange of significant additional state-wide claims data, the parties reached a resolution on a service award, attorneys' fees, and litigation expenses. *Id*. at ¶¶ 19-20. Because the service award, fees, and expenses will be paid separately by the Defendant and will not reduce the recovery to the class or be subsidized by the same, Defendant was incentivized to negotiate and pay for as little fees and litigation expenses as possible. *Id*. at ¶ 18.

Class Counsel have significant experience with labor depreciation class actions, having represented insureds in numerous putative and certified class actions pending throughout the United States. *Id*. at ¶¶ 3-5. Based on this and other class action experience, Class Counsel believe the claims and allegations relating to labor depreciation asserted in the Action have significant merit. Class Counsel also recognized and acknowledged, however, that prosecuting such claims through further fact and expert discovery, class certification motions, trial, and appeals would involve considerable uncertainty, time, and expense. *Id*. at ¶¶ 29-35.

Class Counsel have therefore concluded that it is in the best interests of the Settlement Class that the claims asserted by Plaintiff against Defendant in the Action be resolved on the terms and conditions set forth in the Settlement Agreement. *Id.* After extensive consideration and analysis of the factual and legal issues presented in the Action, and extensive and multiple settlement negotiation sessions, Class Counsel have reached the conclusion that the substantial benefits that Class Members will receive as a result of this Settlement are an excellent result in light of the risks and uncertainties of continued litigation, the time and expense that would be necessary to prosecute the Action through class certification, trial and any appeals that might be taken, and the likelihood of success at trial. *Id.*

## II.	SUMMARY OF CLASS RELIEF

The preliminarily approved settlement provides the Defendant shall pay the following amounts to the following categories of claiming Class Members, subject to the applicable policy limits and deductibles of the Class Members' policies:

1. **Settlement Class Members With Still Withheld Non-Material Depreciation**: For the Class Members who timely file valid Claim Forms by the Claims Deadline and for whom all Nonmaterial Depreciation that was withheld from ACV Payments was *not* subsequently paid, an amount equal to 100% of the net estimated Nonmaterial Depreciation that was withheld from ACV Payments and not subsequently paid, determined as described herein and subject to applicable deductibles and limits, plus simple interest at the rate of 5% per annum on the net estimated Nonmaterial Depreciation determined under this section, from the date of the last ACV Payment to the date of Preliminary Approval.

2. **Settlement Class Members Without Still Withheld Non-Material Depreciation**: Class Members who timely file valid Claim Forms by the Claims Deadline and from whom non-material depreciation may have been initially withheld, but was subsequently repaid in full (*i.e.*, through receipt of replacement cost benefits), will receive a $25 payment.

Settlement ¶ 4.1. Attorneys' fees, costs and service awards as may be approved by this Court will not reduce Class Member's individual payments. Settlement ¶¶ 13.1, 13.5.

## III.	SERVICE AWARD AND CLASS COUNSEL FEES AND EXPENSES

*After* the proposed settlement terms for the putative class was agreed to, the parties began to negotiate proposed attorneys' fees and costs (subject to Court approval). The negotiation of the service award also followed an agreement in principle of the settlement terms for the class that Plaintiff represents. Peterson Declaration at ¶¶ 18-21. All negotiations were conducted at arms' length and structured in accordance with the highest ethical standards to avoid conflicts of interest between Class Counsel and the putative class members. *Id.*

Class Counsel seek as attorneys' fees, costs, and litigation expenses and Defendant has agreed to pay subject to Court approval, an amount no greater than $1,740,000. *Id.* at ¶ 36. The payment of fees and costs will not reduce the value of the Class Members' recoveries. *Id.* at ¶ 37.

In order to negotiate attorneys' fees and costs, the parties attempted to determine the approximate aggregate settlement value of the settlement. After extensive data analysis, Class Counsel estimates the aggregate value of the amount of unrecovered nonmaterial depreciation and interest is in excess of $7MM, exclusive of the value of the attorneys' fees and expenses, service awards and settlement administration costs, all of which would be paid in addition to the relief to the class, subject to the Court's approval. *Id.* at ¶ 28. Class Counsel estimates that the total amount inclusive of the value of the attorneys' fees and expenses, service awards and settlement administration costs is $8.88MM. *Id.* The requested fees, costs, and expenses of $1,740,000 therefore constitute 19.5% of the total benefits to be made available to the class and the amounts to be paid separately by Defendant if approved by the Court. *Id.*

Plaintiff submits that the requested fees, costs and expenses are fair and reasonable when considered under applicable legal standards and authorities, and are particularly appropriate here in view of the substantial risks Class Counsel took in commencing and prosecuting this case and the substantial results achieved. In addition, the service award sought by Plaintiff is fair and reasonable, particularly in light of Plaintiff's extensive involvement in this litigation.

## ARGUMENT

### I.  STANDARD OF REVIEW

Rule 23(h) of the Federal Rules of Civil Procedure provides that "[i]n a certified class action, the court may award reasonable attorney's fees and non-taxable costs that are authorized by law." *Id.* District courts may award reasonable attorneys' fees and expenses from the settlement

of a class action upon motion under Fed. R. Civ. P. 54(d)(2) and 23(h). "Negotiated and agreed-upon attorneys fees as part of a class-action settlement are encouraged as an 'ideal' toward which the parties should strive." *Bailey v. AK Steel Corp.*, 2008 U.S. Dist. LEXIS 18838, at *3 (S.D. Ohio Feb. 28, 2008).[3]

The Court engages in a two-part analysis when assessing the reasonableness of a petition seeking an award of attorneys' fees. *In re Cardinal Health Inc. Sec. Litig.,* 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007). The court first determines the method of calculating the attorneys' fees: it applies either the percentage of the fund approach or the lodestar method. *Id.*; *Van Horn v. Nationwide Prop. and Cas. Inc. Co.,* 436 F. App'x 496, 498 (6th Cir. 2011). The court then analyzes and weighs the six factors described in *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188 (6th Cir. 1974).

The Court has the discretion to select the appropriate method for calculating attorneys' fees "in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). In common fund cases, the award of attorneys' fees need only "be reasonable under the circumstances." *Id.*

"Over and above" attorneys' fee agreements such as this one—negotiated *after* relief to the Class—are subject to deference. Where attorneys' fees will not reduce any class member's recovery and the attorneys' fees are to be paid "*over and above* the settlement costs and benefits with no reduction of class benefits," agreements between the parties as to the amount of fees "are *encouraged*, particularly where the attorneys' fees are negotiated separately and only after all the terms have been agreed to between the parties." *Manners v. Am. Gen. Life Ins. Co.*, 1999 U.S. Dist.

---

[3] Unless otherwise noted, all emphasis is added and all internal citations and footnotes are omitted.

LEXIS 22880, at *84 (M.D. Tenn. Aug. 10, 1999); *Bailey*, 2008 U.S. Dist. LEXIS 18838, at *3 ("courts are especially amenable to awarding negotiated attorneys' fees and expenses in a reasonable amount where that amount is in *addition to and separate from* the defendant's settlement with the class").

Courts, including those in the Sixth Circuit, hold that these "over and above" fee requests are entitled to a "presumption of reasonableness." *Bailey*, 2008 U.S. Dist. LEXIS 18838, at *3 ("fees negotiated and paid separate and apart from the class recovery are entitled to a 'presumption of reasonableness'" (quoting *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322-33 (W.D. Tex. 2007)); *see also Cole v. Collier*, 2018 U.S. Dist. LEXIS 97110, at *42 (S.D. Tex. June 8, 2018) ("When the amount of fees agreed upon, is separate and apart from the class settlement, and has been negotiated after the other terms have been agreed, the attorneys' fee is presumed to be reasonable."). This is particularly true where, as here, "[t]he negotiations took place at arms-length between sophisticated counsel on both sides of the table and under the supervision of the Court." *Bailey*, 2008 U.S. Dist. LEXIS 18838, at *3.

The reasoning of these courts is twofold. First, any hypothetical judicial reduction of an "over and above" fee request upon final approval would only benefit the insurance companies that allegedly breached their contracts—not any class members. *E.g.*, *DeHoyos*, 240 F.R.D. at 322 ("Were the Court to reduce the award of class counsel's fees, this would not confer a greater benefit upon the class, but rather would only benefit Allstate."); *accord Lane v. Page*, 862 F. Supp. 2d 1182, 1258 (D.N.M. 2012) ("Even if the Court were to reject the attorney's fees arrangement, the funds would not go to the class and would not increase the class fund in any way."). Second, "where the money paid to attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no potential

conflict of interest between attorneys and class members." *Mirakay v. Dakota Growers Pasta Co.*, 2014 U.S. Dist. LEXIS 148694, at *31 (D.N.J. Oct. 20, 2014).[4]

## II.   THE COURT SHOULD AWARD ATTORNEYS' FEES, COSTS, AND EXPENSES TO CLASS COUNSEL

Class Counsel seek as attorneys' fees, litigation costs, and expenses the amount of $1,740,000 (approximately 19.5% of the total benefits to be made available to the class and the total amounts to be paid separately by Defendant if approved by the Court).

### A.  The Court Should Use The Percentage Of The Fund Approach

The Supreme Court recognizes that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 U.S. Dist. LEXIS 91661, at *3-4 (E.D. Tenn. June 30, 2014). When calculating attorneys' fees under the common fund doctrine, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

---

[4] *See also Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245 (E.D.N.Y. 2010) (". . . the requested attorneys' fees in this case will not be drawn from a common fund, but rather will be paid directly by defendant. Whatever attorneys' fees are awarded, therefore, will in no way diminish the benefit to the class under the Settlement, . . . . Furthermore, the issue of attorneys' fees was not raised during the Settlement negotiations until after the parties had already agreed upon the benefit to the class. Therefore, the Court's fiduciary role in overseeing the award is greatly reduced."); *Bezio v. General Electric Co.*, 655 F.Supp.2d 162 (N.D.N.Y. 2009) ("If money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members."); *In re Sony SXRD Rear Projection TV Class Action Litig.*, 2008 U.S. Dist. LEXIS 36093, at *43 (S.D.N.Y. May 1, 2008) ("[T]he danger of conflicts of interest between attorneys and class members is diminished... the fee was negotiated only after agreement had been reached on the substantive terms of the Settlement benefitting the class").

Courts in the Sixth Circuit prefer this method of awarding attorneys' fees, in part, because it eliminates disputes about the reasonableness of rates and hours and conserves judicial resources. *See, e.g.*, *Rawlings*, 9 F.3d at 515-16 ("[t]he percentage of the fund method has a number of advantages; it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation"); *In re Packaged Ice Antitrust Litig.*, 2011 U.S. Dist. LEXIS 150427, at *70 (E.D. Mich. Dec. 13, 2011); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 502 (E.D. Mich. 2008); *In re Cardinal*, 528 F. Supp. 2d at 762 (the Sixth Circuit has "explicitly approved the percentage approach in common fund cases"). Indeed, "'[c]ourts readily approve the percentage-of-the-fund method when a plaintiff obtains an exceptional result and avoids extended litigation time and costs.'" *Blasi, LLC*, 2019 U.S. Dist. LEXIS 198201, at *23 (internal citations omitted). Additionally, as this Court recently explained,

> It would be inequitable for a court to reduce a fee award based on a lodestar cross-check without considering a law firm's work other cases raising the same or similar issues. That work may, as it did here, substantially enhance the result Class Counsel is able to achieve. This is true for several reasons, including that (1) successfully litigating a particular issue may improve the settlement prospects of cases raising the same issue, (2) developing expertise in a specific niche improves the firm's ability to effectively litigate within that niche, and (3) the work product from one case can be used in a case raising the same issue, resulting in value that is not adequately reflected in a lodestar calculation. These factors weigh in favor of and confirm the appropriateness of what courts in this district already do: base common fund fee awards in wage and hour cases on a percentage-of-the-fund. In most cases, the percentage-of-the-fund approach automatically factors into the award any enhancement to the settlement derived from Class Counsel's work in similar cases.

*Arp v. Hohla & Wyss Enters., LLP*, 2020 U.S. Dist. LEXIS 207512, *21 (S.D. Ohio Nov. 5, 2020).

There can be no doubt that counsel's work on other labor depreciation cases substantially enhanced the result they were able to efficiently achieve here. For example, *Hicks v. State Farm Fire and Cas. Co*., 965 F.3d 452 (6th Cir. July 10, 2020), *reh'g en banc denied* (6th Cir. Aug. 26,

2020), briefed and argued by Class Counsel Erik Peterson, established Sixth Circuit law on class certification of labor depreciation cases. Similarly, Class Counsel are counsel of record in *Perry* and *Cranfield*, which established the merits law on labor depreciation in Ohio. *See* Peterson Declaration at ¶¶ 3-4; *Perry*, 953 F.3d at 423; *Cranfield v. State Farm Fire & Cas. Co.*, 798 F. App'x 929, 930 (6th Cir. 2020). This Court cited both *Perry* and *Cranfield* extensively in its Order denying Defendant's motion to dismiss. Dkt. 17. Class Counsel are also counsel of record in all currently pending labor depreciation cases in Ohio and within the Sixth Circuit, as well as the vast majority of labor depreciation cases pending nationwide. *See* Peterson Declaration at ¶¶ 3-4.

In cases such as this, there is a trend towards adoption of a percentage-of-the-fund method. *In re Skelaxin*, 2014 U.S. Dist. LEXIS 91661, at *4.[5] The "percentage of the fund" fee award sought here by Class Counsel is thus supported by Sixth Circuit precedent, *see Rawlings*, 9 F.3d at 516, and the amount sought is well within the range of fee awards in labor depreciation cases around the country. *See* Peterson Declaration*,* Exhibit A (table showing fee awards in recently approved labor depreciation settlements); *see also In re Skelaxin*, 2014 U.S. Dist. LEXIS 91661, at *5 (one-third "is within the range of fees ordinarily awarded"); *Manners*, 1999 U.S. Dist. LEXIS

---

[5] Increasingly, district courts in the Sixth Circuit do not consider the lodestar as a cross-check when analyzing a settlement under the percentage methodology. *See*, *e.g.*, *Blasi*, 2019 U.S. Dist. LEXIS 198201, at *26 n.2 ("Performing the lodestar cross-check is optional. The Court deems that analysis unnecessary here."); *Barnes v. Winking Lizard, Inc.*, 2019 U.S. Dist. LEXIS 65657, at *15 (N.D. Ohio Mar. 26, 2019) (using the percentage of the fund method without considering the lodestar method); *Dick v. Sprint Comm. Co. L.P.*, 297 F.R.D. 283, 300 (W.D. Ky. 2014) ("The Court emphasizes that a lodestar analysis is unnecessary if the fee does not appear to be excessive as a percentage of the recovery."). This is because "the lodestar method is cumbersome; the percentage-of-the-fund approach more accurately reflects the result achieved; and the percentage-of-the-fund approach has the virtue of reducing the incentive for plaintiffs' attorneys to over-litigate or 'churn' cases." *In re Skelaxin*, 2014 U.S. District LEXIS 91661, at *4 (citations omitted)).

22880, at *88 ("throughout the Sixth Circuit, attorneys' fees in class actions have ranged from 20%-50%" (collecting cases)).

### B. Fees Are Properly Awarded As A Percentage Of The Gross Benefits Made Available To The Class

The Supreme Court also recognizes that a class member's "right to share the harvest of the suit upon proof of their identify, *whether or not they exercise it*, is a benefit in the fund created by the efforts of class representatives and their counsel." *Boeing*, 444 U.S. at 478-80 (holding class counsel are entitled to reasonable fee based on funds potentially available to be claimed by class members, regardless of the amount actually claimed (emphasis added)). Accordingly, "the proper approach to awarding fees under the percentage-of-the-fund method is to award fees based on a percentage of the entire common fund obtained by Class Counsel, not the amount that Settlement Class Members choose to claim." *Manjunath A. Gokare, P.C. v. Fed. Express Corp.*, 2013 U.S. Dist. LEXIS 203546, at *30 (W.D. Tenn. Nov. 22, 2013) (recognizing "[i]t would not be appropriate for Class Counsel to receive a lower award because Settlement Class Members choose not to claim funds that are easily available to them.");[6] *Gascho v. Global Fitness Holdings, LLC*, 285 (6th Cir. 2016) (holding percentage-of-fund approach properly focuses on the total amount of relief made available to class); *Moulton v. U.S. Steel Corp.,* 581 F.3d 344 (6th Cir. 2009) (holding common fund fee award should be based on total amount of settlement rather than amount actually claimed by class members and approving award of 30% of gross amount of settlement); 2 MᴄLᴀᴜɢʜʟɪɴ ᴏɴ Cʟᴀss Aᴄᴛɪᴏɴs § 6:24 (18th ed. Oct. 2021 Update) ("Most Circuits to address the question hold that in a common fund case … attorneys' fees should be calculated as a

---

[6] In *Gokare,* the court noted that several Circuit Courts have held it is an abuse of discretion for a court to base a percentage-of-the-fund award on the amount claimed by class members rather than the total amount of a common fund. 2013 U.S. Dist. LEXIS 203546, at *35 (citing *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 436-37 (2d Cir. 2007).

percentage of the total funds made available through counsel's efforts, whether claimed or not." (citing cases)).[7]

Additionally, precedent within the Circuit supports applying the selected percentage to the settlement fund *before* separately deducting the litigation costs and expenses from the funds. For example, the Sixth Circuit has held:

> When conducting a percentage of the fund analysis, courts must calculate the ratio between attorney's fees and benefit to the class. Attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which includes the "benefit to class members," the attorney's fees and may include costs of administration).

*Gascho*, 822 F.3d at 282; *see also, e.g., In re Sulzer Orthopedics, Inc.,* 398 F.3d 778, 780-82 (6th Cir. 2005) (affirming fee awards from a common benefit fund based on the gross settlement amount); *Packaged Ice*, 2011 U.S. Dist. LEXIS 150427, at *70-71 ("The fee percentage is applied to the settlement fund before the separate award of litigation costs and expenses are deducted from the fund."); *In re Delphi*, 248 F.R.D. at 505 (attorneys' fees awarded on gross settlement fund); *In re Cardizem Antitrust Litig.*, 218 F.R.D. 508, 531-35 (E.D. Mich. 2003) (awarding costs in addition to percentage of the fund fee).[8]

---

[7] *Accord Landsman & Funk, P.C. v. Skinder-Strauss Assoc.*, 639 Fed. App'x 880, 884 (3d Cir. 2016) (no abuse of discretion to award fees based on amount made available to class despite reversion of significant portion of that amount to defendant following completion of claims process); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir. 1999) (distribution of attorneys' fees are to be based upon the funds available to eligible claimants, whether claimed or not; affirming fee award nearly twice the amount actually claimed by the class from the fund).

[8] *Accord In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 976 (8th Cir. 2018) ("the district court acted within its discretion when it included notice and administrative expenses in its calculation of the total benefit to the class"); *Lake Forest Partners, L.P. v. Sprint Comm. Co. L.P.*, 2013 U.S. Dist. LEXIS 84681, at *6 (W.D. Pa. June 17, 2013) (holding that "under the percentage-of-the-fund method, it is appropriate to base the percentage on the gross cash benefits available for class members to claim, plus the additional benefits conferred on the class by the Settling Defendants' separate payment of attorney's fees and expenses, and the expenses of administration."); *Bethea v. Spring Comm. Co., L.P.*, 2013 U.S. Dist. LEXIS 7696, at *10 (S.D. Miss. Jan. 18, 2013) ("Under the percentage-of-the-fund method, it is appropriate to base the

### C. The Fee Requested By Class Counsel Is Appropriate

Class Counsel request that the Court award attorneys' fees, litigation costs and expenses in the amount of $1,740,000, which is 19.5% of the total benefits to be made available to the Class and the total amounts to be paid separately by Defendant, subject to this Court's approval. *See* Peterson Declaration at ¶¶ 37-38. This percentage is calculated pursuant to the Sixth Circuit's decision in *Gascho, supra.* Here the numerator is the amount of attorneys' fees and costs ($1,740,000). The denominator is the sum of the: (1) aggregate principal and interest values to be made available to the class on a claims-made basis (excluding value of interest-only claims) ($7,095,111); (2) Administrator's estimated website and administration costs (approximately $50,000); (3) the service award to the class representative ($7,500); and (4) Class Counsel's attorneys' fees and litigation costs and expenses ($1,740,000). Peterson Declaration at ¶¶ 37-41.

As previously discussed, reasonable fee awards generally range from 20 to 50 percent of the common fund. *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 633 (W.D. Ky. 2006) ("[A] one-third fee from a common fund case has been found to be typical by several courts." (citations omitted)), *aff'd*, 534 F.3d 508 (6th Cir. 2008); *Manners*, 1999 U.S. Dist. LEXIS 22880, at *88; William B. Rubenstein, NEWBERG ON CLASS ACTIONS §15:73 (5th ed. Dec. 2021 Update) ("regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

---

percentage on the gross cash benefits available to class members to claim, plus the additional benefits conferred on the class by the Settling Defendants' separate payment of attorneys' fees and expenses, and the expenses of administration."); *Buford v. Cargill, Inc.*, 2012 U.S. Dist. LEXIS 161232, at *5 (W.D. La. Nov. 8, 2012) (recognizing "class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed").

Ohio district courts and other courts within the Circuit routinely approve attorneys' fees in class actions of one-third of the settlement amount. *See, supra,* Arg. § II.A.[9]

Here, Class Counsel seek fees at the low end of "the range of fees ordinarily awarded" in class actions within the Sixth Circuit. *Skelaxin*, 2014 U.S. Dist. LEXIS 91661, at *10-11; *see also In re Se. Milk Antitrust Litig.*, 2013 U.S. Dist. LEXIS 70167, at *16 (E.D. Tenn. May 17, 2013) (one-third fee from settlements totaling $158.6 million and finding that 33 percent "is certainly within the range of fees often awarded in common fund cases both nationwide and in the Sixth Circuit. The 19.5% attorney fee award being sought is imminently modest when compared with other fee awards of this size, and as discussed more thoroughly below, is fair and reasonable considering the work performed by Class Counsel, the risk assumed, and the results achieved.

### D. Consideration Of The Factors Used By Courts In The Sixth Circuit And Ohio Supports The Requested Fee Award

Courts in the Sixth Circuit evaluate the reasonableness of a requested fee percentage award using six factors: (1) the value of the benefit rendered to the plaintiff class; (2) whether the services were undertaken on a contingent fee basis; (3) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (4) the complexity of the litigation; and (5) the professional skill and standing of counsel involved on both sides. *Rawlings*, 9 F.3d at 516–

---

[9] Fee awards of more than one-third are also common. *E.g., Wilson v. Anthem Health Plans of Ky., Inc.*, 2019 U.S. Dist. LEXIS 217458, at *9 (W.D. Ky. Dec. 17, 2019*) (approving attorneys' fees and costs of 38% of settlement fund); *Salinas v. United States Xpress Enters., Inc.*, 2018 U.S. Dist. LEXIS 50800, at *22 (E.D. Tenn. Mar. 8, 2018) (awarding attorneys' fees representing 40% of settlement amount); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 U.S. Dist. LEXIS 119870, at *39 (W.D. Ky. Dec. 22, 2009) (finding 50% of settlement fund was reasonable).

17; *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983). When applied here, these factors confirm that the requested fee is fair.

Additionally, there was no collusion in the negotiation of the attorneys' fee provisions in these settlements. "Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered. *** Here, there is no such evidence." *Gokare*, 2013 U.S. Dist. LEXIS 203546, at *11-12; *see also Johnson v. W2007 Grace Acquisition I, Inc.*, No. 13-2777, 2015 WL 12001269, at *5 (W.D. Tenn. Dec. 4, 2015) ("Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary."). Rather, Class Counsel has confirmed that, following the highest ethical standards, the attorneys' fees, costs and expenses were not negotiated until *after* the substantive terms of the settlements had been agreed upon. Peterson Declaration at ¶¶ 18-21. This is the standard and ethical manner of negotiating class action settlement and fee issues and allows the defendant to actively contest and negotiate the amounts of fees without any adverse impact on the putative class members. NEWBERG § 13:2 ("Fees should not be negotiated between class counsel and defendant's counsel until after a settlement of the class's claims has been agreed upon.").

*1. Counsel Secured Valuable Benefits For The Class*

In comparison to other labor depreciation class actions that have settled to date, this Settlement is extremely favorable because: (1) Class Members who submit a Claim Form will receive a cash payment equal to 100% of the principal amount of any still withheld non-material depreciation from Class Members' actual cash value payments, plus 5% interest for the periods of withholding; (2) Class Members who have already been repaid previously withheld nonmaterial depreciation, and who submit a Claim Form, will receive a $25 cash payment; and (3) the release

is narrowly tailored to the subject matter of this lawsuit.[10] Additionally, Defendant is also paying for all notice and settlement administration costs. The foregoing provides an excellent result for the Class. *E.g., In re Southeastern Milk*, 2018 U.S. Dist. LEXIS 131855, at *16 (approving attorneys' fees of one-third percentage of settlement fund based, in part, on extraordinary result obtained by class counsel where total settlement, when combined with prior settlement, was over 70% of the total damages calculated by plaintiffs' expert).

### 2. Society Has An Important Stake In Rewarding Attorneys With Reasonable Fees In This Litigation

Courts in the Sixth Circuit weigh "society's stake in rewarding attorneys who [obtain favorable outcomes in class actions] in order to maintain an incentive to others .... Society's stake in rewarding attorneys who can produce such benefits in complex litigation such as in the case at bar counsels in favor of a generous fee.... Society also benefits from the prosecution and settlement of private [] litigation." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 534 (internal quotation marks omitted). The improper withholding of labor costs as depreciation in the calculation of ACV payments alleged here "would likely go unchallenged absent the willingness of attorneys to undertake the risks associated with such expensive and complex litigation." *In re Southeastern Milk*, 2018 U.S. Dist. LEXIS 131855, at *16.

Indeed, these labor depreciation cases present classic small, negative value claims such that "[i]t would be incredibly difficult for class members to pursue a claim against Defendant[s] outside of [these] class actions." *Mitchell v. State Farm Fire & Cas. Co.*, 327 F.R.D. 552, 564 (N.D. Miss.

---

[10] Settlements in which class members are entitled to receive 100% of their claimed damages are both rare and exceptional. *E.g., Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1062 (D. Minn. 2010) (holding settlement in which "Settlement Class Members who file timely and otherwise valid claims will receive *100%* of their claimed damages—a percentage almost unheard of in class-action litigation" supported class counsel's fee request (emphasis in original)).

2018) (finding superiority of labor depreciation class action where majority of putative class members' claims value at or below $20,000, including named plaintiff's $738 claim), *aff'd* 954 F.3d 700, 712 (5th Cir. 2020), *reh'g and reh'g en banc denied* (5th Cir. May 13, 2020); *see also Arnold v. State Farm Fire & Cas. Co.*, 2020 U.S. Dist. LEXIS 219533, at *10 (S.D. Ala. Nov. 23, 2020) (finding superiority of labor depreciation class action where "average value of non-material withholding is approximately $594.67" and "Plaintiffs' ability to obtain relief through individual damages suits is likely not economically feasible"). "Awards of substantial attorneys' fees in cases like this are necessary to incentivize attorneys to shoulder the risk of nonpayment to expose violations of the law and to achieve compensation for injured parties." *In re Southeastern Milk*, 2018 U.S. Dist. LEXIS 131855, at *20.

Without the willingness of Class Counsel to assume the risks inherent in these cases (or in other cases of similar magnitude and complexity) the Settlement Class Members would not have recovered anything, let alone the substantial recoveries secured here. The public interest is thus served by awarding compensation in an amount appropriate to encourage skilled attorneys to assume the risks of this type of litigation.

### 3. *Class Counsel Have Worked On A Contingent Basis*

Class Counsel have pursued this litigation on a contingent basis with the amount of any fee being subject to Court approval, assuming a substantial risk that the cases would result in no recovery and leave counsel not only uncompensated, but also losing their substantial investments in the cases. *See* Peterson Declaration at ¶¶ 29-34 (discussing substantial litigation risks). These risks support a reasonable fee award from a common fund. *See Dick*, 297 F.R.D. at 300 (risk of non-payment a factor supporting the requested fee); *In re Packaged Ice*, 2011 U.S. Dist. LEXIS 150427, at *70 (same).

The contingency factor "stands as a proxy for the risk that attorneys will not recover compensation for the work they put into a case." *In re Cardinal Health*, 528 F. Supp. 2d at 766. Indeed, "'some courts consider the risk of non-recovery as the most important factor in fee determination.'" *Kritzer v. Safelite Sols., LLC*, 2012 U.S. Dist. LEXIS 74994, at *29-30 (S.D. Ohio May 30, 2012) (citation omitted). "[W]ithin the set of colorable legal claims, a higher risk of loss does argue for a higher fee." *In re Trans Union Corp. Privacy Litig.*, 629 F. 3d 741, 746 (7th Cir. 2011).

The Sixth Circuit counsels that the specific characteristics of a class action case can govern the appropriateness of a fee award. *Rawlings*, 9 F.3d at 516 (finding that the district court can determine the appropriate method for calculating attorneys' fees considering the "unique characteristics of class actions"). The legal and factual issues surrounding this case are extremely complex. It should not be ignored that at the time Class Counsel agreed to take on this case on a contingent basis, only two Ohio federal district courts had ruled on the labor depreciation question, and both had ruled adverse to policyholders. *Cranfield v. State Farm Fire & Cas. Co.*, 340 F. Supp. 3d 670, 671 (N.D. Ohio 2018); *Perry v. Allstate Indem. Co.*, 2018 U.S. Dist. LEXIS 199616 (N.D. Ohio Nov. 26, 2018). Being rewarded only for success in litigation this complex creates a high degree of risk. The substantial risk undertaken by Class Counsel strongly favors the fee requested. *Dick*, 297 F.R.D. at 300; *In re Delphi*, 248 F.R.D. at 503-54.

### 4. The Complexity Of The Litigation Supports The Requested Fee

"Most class actions are inherently complex." *Moore v. Aeroteck, Inc.*, 2017 U.S. Dist. LEXIS 102621, at *10 (S.D. Ohio June 30, 2017). This case is no exception. The proposed settlement here was not reached until after the Court denied Defendant's motion to dismiss, after Class Counsel prevailed at the Sixth Circuit in *Hicks*, which established class certification of labor

depreciation cases in the Sixth Circuit, after the parties engaged in significant and extensive data analysis, and assessed the risks of prevailing at both the trial court and appellate levels. Peterson Declaration at ¶¶ 14-20, 29-34.

Many courts around the country have issued orders adverse to policyholders on labor depreciation. *Hicks*, 751 Fed. Appx. at 710 (the "substantial weight of authority" is in favor of insurers in labor depreciation class actions). Moreover, labor depreciation class actions, in particular, are notoriously complex and slow moving due to the increased likelihood of interlocutory appeals via state supreme court "question certification" laws, 28 U.S.C. 1292(b) and/or Federal Rule of Civil Procedure 23(f). For example, the labor depreciation lawsuit *Stuart v. State Farm Fire & Cas. Co.*, was filed on January 2, 2014 and remained pending in the Western District of Arkansas over six-years (and after an Eighth Circuit appellate decision).[11] *Stuart*, Case No. 4:14-4001 (W.D. Ark.). Similarly, *Hicks* was filed on February 28, 2014 and settlement was approved more than eight years later (after two trips to the Sixth Circuit).

As these cases demonstrate, the risk at the time of suit and settlement was and remains substantial. Peterson Declaration at ¶¶ 29-34. This lawsuit could have continued for several additional years in trial and appellate courts absent settlement. More importantly, while labor depreciation class lawsuits have settled or been dismissed with no recovery, no certified labor depreciation class action has ever gone to final judgment in favor of the policyholder. Finally, at the time the relief to the putative class was tentatively agreed to by the parties—and as of the date of this filing—other insurance companies continue to actively litigate their cases in Ohio and within the Sixth Circuit.

---

[11] *Stuart v. State Farm Fire & Cas. Co.,* 910 F.3d 371 (8th Cir. 2018*), reh'g and reh'g en banc denied* (8th Cir. Jan. 29, 2019).

Defendant retained Stinson LLP, a national law firm with specialized expertise in defending complex insurance class action litigation and, in particular, labor depreciation class actions. Absent settlement, these talented defense lawyers would have continued to put forward several grounds for avoiding both liability and class certification. Given the foregoing, the complexity and risks inherent in the litigation supports the requested fee.

##### 5. The Skill And Experience Of Counsel Supports The Requested Fee

The skill and experience of counsel on both sides of the litigation is a factor courts consider in determining a reasonable fee award. *Arp*, 2020 U.S. Dist. LEXIS 207512, at *22. The Court previously found Plaintiff's counsel here have the requisite skill and experience in class action and labor depreciation litigation to serve effectively as class counsel for the Class. Dkt. 30, at ¶ 6. In fact, Class Counsel have taken on several large insurance companies in contingent fee litigation, including labor depreciation cases resulting in both class certification and favorable merits rulings. *See, e.g., Hicks,* 965 F.3d 452 (affirming certification of labor depreciation class action); *Arnold v. State Farm Fire & Cas. Co.*, 268 F. Supp. 3d 1297, 1299 (S.D. Ala. 2017) (depreciation of labor costs unlawful under State Farm's Alabama policy); *Shields v. Metro. Prop. & Cas. Ins. Co.*, 2020 U.S. Dist. LEXIS 235012, at *12-13 (N.D. Miss. Dec. 14, 2020) (holding "the term 'actual cash value' in the subject policy is ambiguous and can be interpreted to either include or exclude labor cost depreciation; the Court thus resolves that ambiguity in favor of the Plaintiff."); Peterson Declaration at ¶¶ 3-4.

In assessing this factor, courts also look to the qualifications of the defense counsel opposing the class. Defense counsel here are also extremely experienced insurance defense attorneys, responsible for representing Defendant in labor depreciation class actions in Arizona, Illinois, Tennessee, and other states. Accordingly, this factor supports the fee being requested by

Class Counsel. *In re Skelaxin* 2014 U.S. Dist. LEXIS 91661, at *10 (holding fact that "Class Counsel demonstrated this experience and skill in the efficient and effective prosecution of this action, and in achieving a relatively quick resolution" supported reasonableness of fee request); *see also In re Delphi*, 248 F.R.D. at 504 ("The ability of Lead Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested.").

Given the excellent results achieved, the complexity of the claims and defenses, the real risk of non-recovery, the formidable defense team, the delay in receipt of payment, and the substantial experience and skill of counsel, the requested fee is reasonable compensation for the work done by Class Counsel in this case.

## III. A SERVICE AWARD SHOULD BE AWARDED TO THE CLASS REPRESENTIVE FOR HER EFFORTS IN ASSISTING CLASS COUNSEL IN PROSECUTING THIS ACTION

Service awards are typically provided to class representatives for their often extensive involvement with a lawsuit and are "efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hogan v. Cleveland Ave Rest. Inc.*, 2019 U.S. Dist. LEXIS 212214, at *19 (S.D. Ohio Dec. 10, 2019) (approving service awards up to $15,000).

The $7,500 service award is appropriate here in light of the substantial efforts made by Plaintiff to protect the interests of the Settlement Class, the time and effort she expended pursuing these matters, as well as the substantial benefit she bestowed on the Class. Plaintiff regularly communicated with Class Counsel, provided documents, reviewed documents, assisted and participated in settlement negotiations, and generally acted in a fashion that was consistent with a

class representative of the highest ethical standards for the duration of this litigation. *See* Peterson Declaration at ¶ 51.

Significantly, neither Defendant, nor any Class Member, objects to the requested service awards for Plaintiff. The service payment is consistent with the payments made in the Sixth Circuit as well as in other jurisdictions, and in other labor depreciation class actions. *See Mitchell v. State Farm Fire & Cas. Co.*, No. 3:17-cv-00170 (N.D. Miss. February 25, 2021) (awarding class representative in labor depreciation class action a service award of $15,000); *Owner-Operator Indep. Drivers Ass'n v. Arctic Express, Inc.*, 2016 U.S. Dist. LEXIS 128819, at *19 (S.D. Ohio Sep. 21, 2016) (approving service awards up to $25,000); *In re Skelaxin* 2014 U.S. Dist. LEXIS 91661, at *11-12 (approving class representative service awards of $50,000 each).

Therefore, Class Counsel respectfully request that the Court approve the service award to Plaintiff and Class Representative in the amount of $7,500, which if approved will not reduce the Settlement Class Members' recoveries.

## CONCLUSION

Given the foregoing, Plaintiff respectfully request that the Court award the following:

1. Attorney's fees, litigation costs and expenses to Class Counsel in the amount of $1,740,000 (or approximately 19.5% of the total benefit to be made available to the class on a claims-made basis and the total amount to be paid separately by Defendant); and

2. Service award to the Class Representative in the amount of $7,500 for her service to the Settlement Class.

Respectfully submitted,

 /s/  Stephen G. Whetstone
STEPHEN G. WHETSTONE (0088666)
Email: steve@whetstonelegal.com
Whetstone Legal, LLC
P.O. Box 6
2 N. Main Street, Unit 2
Thornville, Ohio 43076
Telephone: 740.785.7730
Facsimile: 740-205-8898

and

Erik D. Peterson (*pro hac vice*)
ERIK PETERSON LAW OFFICES, PSC
150 East Short Street, Suite 150
Lexington, KY 40507
T: 800-614-1957
erik@eplo.law

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed and served via the Court's ECF filing system which will send electronic notices of same to all counsel of record on this the 27th day of June, 2022.

 /s/  Stephen G. Whetstone